| | |
|---|---|
| 45 | 345 |
| s7NW | 895 |
| 131 | 4554 |

GEORGE A. CHASE ADMINISTRATOR FOR ALPHEUS COON v. JONATHAN WELSH, JAMES WELSH AND SARAH F. BELKNAP.

*Deed void as against creditors—Tender.*

Where a debtor, in anticipation of proceedings against him, made a deed to his brother, the evident purpose of which was to hamper the title, and for which a very small part of the consideration was paid, the deed was held to be invalid as against creditors.

A mortgagee of land against which attachment proceedings have been started, is not without notice where his counsel, before advancing the money secured by the mortgage, recognized the attachment as a lien to be got rid of in order to clear the title, and caused money to be tendered for that purpose.

A tender to satisfy a claim in litigation is not good if made in the street, without any computation or means of computation that would not require delay, and on the idea that the claim is in judgment when no judgment has been entered, and when no costs have been or could regularly have been taxed.

A mere offer to pay whatever shall be ascertained to be necessary to discharge a litigated demand, without taken any steps to find out, beyond preparing a receipt in blank purporting to discharge the judgment when, in fact, none has been entered, is no proper tender of payment.

The effect of a tender made during suit or before judgment must always depend more or less on the views of the court and rarely affects anything but the liability for costs. It cannot discharge the debt until paid.

Whether tender of an amount in litigation can discharge an attachment—Q. And if it could, it would not make valid a transfer of the property attached, if void as against the creditor, or prevent assailing it on execution, exeept as to intervening *bona fide* purchasers or encumbrancers.

Appeal from Wayne. Submitted Jan. 12. Decided Jan. 19.

BILL to set aside deed. Dismissed below. Complainant appeals. Reversed; decree entered.

*David Fox* and *Alfred Russell* for complainant. One who knowingly takes a mortgage, fraudulent as to creditors, is not entitled to relief: *Smith v. Ayer* 101 U. S. 320; a tender must be unconditional: *Potts v. Plaisted* 30 Mich. 149.

*Ward v. Palmer* for defendants. An unqualified offer of the amount due on a claim in litigation is a sufficient answer to a suit to foreclose a mortgage given for the debt: *Eslow v. Mitchell* 26 Mich. 500; *Moynahan v. Moore* 9 Mich. 9; *Van Husan v. Kanouse* 13 Mich. 303; *Collar v. Harrison* 30 Mich. 66.

CAMPBELL, J. This is a cause wherein the bill was filed in aid of an execution levy. Jonathan Welsh is the execution debtor, James Welsh, his brother and grantee, and Sarah F. Belknap a mortgagee from James. The facts are not complicated. Jonathan Welsh in anticipation of proceedings against him by complainant at law, is charged to have conveyed lot 1 in block 8 of private claim 609 in Detroit, on the 15th of December, 1874, to his brother James, for a nominal consideration of $2000. The debt for which complainant prosecutes was for moneys belonging to the children of Alpheus Coon, of whom James was guardian, but these funds had got into the hands of Jonathan. Some delays were incurred in getting matters into shape for suit, and it was during this period that the deed was made which is claimed to have been fraudulent. In February, 1875, complainant brought suit in attachment and this lot was attached.

In July, 1875, a verdict was obtained, but for some reason judgment was not rendered until January, 1876, after which executions were issued, and the land levied on. James claims to have paid down $100, and given mortgages for $1900 in all, partly on this property and partly on other property of his own. On the 15th of September, 1875, the brothers made arrangements to borrow of Mrs. Belknap, through her agent Mr. Ward of Detroit, $2000 of which a sufficient amount was to be paid to extinguish complainant's claim and discharge the attachment, of which Mr. Ward had got knowledge and which was to be got rid of so as to clear the title. By the same arrangement the mortgages from James were to be discharged also. An attempt was made by a clerk of Mr. Ward accompanying Jonathan to tender the amount due complainant to Mr. Prentis his attorney. Before furnishing the money Mr. Ward got a mortgage for $2000 on lot 1 and some other property, and discharges of James Welsh's mortgages. Prentis did not accept the tender. Ward then concluded not to let Welsh have more than $1200, and paid this over the same day, and endorsed down the mortgage to Mrs. Belknap to that sum. No money was paid into court, and payment of the complainant's debt was refused, and Ward seems to have supposed the tender cleared the title. The court below dismissed the bill, probably on this ground.

There can be no doubt of the invalidity of the deed to James, as against creditors. He does not pretend to have paid more than $100 previous to the discharge of his mortgages, and it is doubtful whether he paid that. The brothers were both mixed up in the affairs of this trust fund, and it is plain that the purpose of the deed was to hamper the title. Mrs. Belknap's counsel recognized the attachment as a lien which must be got rid of to clear the title, and required the money to be tendered for that purpose. Mrs. Belknap, therefore, was not a mortgagee without notice.

We do not think the tender amounted to anything. Even if we assume the effect of a tender at that time would have been what the parties appear to have supposed, it was not

made in such manner and circumstances as to sustain it. It was made in the street, when no costs had been taxed or could be taxed regularly, without any computation or means of computation that would not have required delay, and upon the idea that the claim was in judgment, when no judgment had been entered.

No sum of money whatever was tendered, and no tender in the proper sense made at all. There was no more than a proposition or offer to pay what might be ascertained as the proper sum, but the parties tendering had not informed themselves and took no steps to do so beyond preparing a receipt in blank to be filled up when the supposed judgment and interest should be figured up. This receipt purported to discharge the judgment. Prentis refused to sign it. There is some conflict as to what reason he gave, but inasmuch as no sum of money whatever was produced or offered, all that it could have amounted to at best was a manifestation of readiness to make payment when the proper amount was figured up. This was no tender of payment. But if it had been, inasmuch as the tender was not kept good, it could not have availed in this case. It was not made on a judgment, which is a finality, but during the pendency of the suit, when it had not been judicially determined that the verdict should stand as the basis of a judgment. The effect of a tender during suit or before judgment must always depend more or less on the views of the court, and rarely affects more than the liability for costs. It cannot discharge the debt until paid. The law has provided other ways of dissolving or releasing attachments, and we are not aware of any rule which would make a tender have that operation. And if it did, that would not make the transfer valid or prevent assailing it on execution except as to intervening *bona fide* purchasers or encumbrancers; and no one in this suit holds that position.

The complainant is entitled to a decree holding the deed to James and the mortgage to Mrs. Belknap void as against the

execution levy, and ordering the proper steps to make this relief effectual.

The decree dismissing the bill must be reversed with costs of both courts and a proper decree entered in accordance with these views.

The other Justices concurred.