Argued October 19, decided Nov. 7, 1911.

## PROEBSTEL v. TROUT.

[118 Pac. 551.]

PLEADING—SUFFICIENCY.

1. A plea of tender in an action on a promissory note, of the full amount due on the note, is insufficient, as a conclusion of law, for not alleging the amount tendered.

TENDER—SUFFICIENCY—ABILITY TO PAY.

2. In order to make a tender of payment by the maker of a note sufficient without actual production and offer of the cash, he must have been actually able and willing to pay at the time.

EQUITY—MAXIMS.

3. The maxim that equity regards the substance rather than the form gives effect to the intention of the parties either to aid an act abortive at law, because formally defective, or to impose a liability sought to be evaded by concealment of the true character of the transaction.

BILLS AND NOTES—PAYMENT IN EQUITY—SURRENDER OF NOTE.

4. A note for $1,000 was assigned to D., together with corporate stock pledged as collateral therefor, and, after maturity of the note, D. delivered it and the stock to the maker, who was secretary of the corporation, but without any intention of extinguishing it, and demanded that the stock be transferred to D., according to the contract of pledge; and the maker took the note, stating that he would attend to it soon, but, instead of transferring the stock, offered to pay D. $1,063 without stating to what debt it should be applied, and without being financially able to make the payment, had it been accepted. *Held*, that the debt represented by the note was not extinguished in equity, which regards the substance, and not the form.

PLEDGES—RIGHTS OF PLEDGEES AFTER DEFAULT.

5. A pledgee in possession of the pledged property had a qualified property therein after default, so as to be authorized to sell the property as his own, or have another dispose of it for his benefit.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by H. O. Proebstel against W. A. Trout and S. J. Donaldson.

The substance of the complaint is, that about December 8, 1908, the defendant Trout borrowed from Florence Rucker $1,000, giving his note therefor, and at the same time executed and delivered to her the following writing:

"Whereas, I, the undersigned, W. A. Trout, secured a loan from Florence Rucker this 8th day of December, 1908, in the amount of $1,000.00, and due on or before six months from date, as evidenced by a certain promissory note signed by me and payable to said Florence Rucker and due in said amount and due at said time, and being desirous of securing the payment of said note, we do hereby deposit with said Florence Rucker twenty thousand shares of the stock of the Portland Collapsible Box Company, incorporated under the laws of the State of Oregon, as collateral security for the payment of said note. Said stock being evidenced by certificate No. 74 to Walter A. Trout for 20,000 shares. Said stock is deposited with said Florence Rucker for the purpose above set forth and under the following conditions, to wit: If said note be not paid when due, with interest and other charges due thereon, in full, then said certificate and shares of

stock shall belong absolutely to said Florence Rucker, and the secretary of said Portland Collapsible Box Company, or other proper official is hereby authorized and directed to transfer to the said Florence Rucker on the books of said company and to do any and all things necessary to a full, correct and legal transfer of the ownership of said stock or certificates thereof from the undersigned to the said Florence Rucker. In witness whereof, I have this day set my hand this 8th day of December, 1908.

"(Signed) W. A. Trout."

It is further alleged, in substance, that on July 12, 1909, Florence Rucker sold, assigned, and transferred the debt then due from defendant Trout to G. C. Donaldson, and thereafter, on the 21st of July, G. C. Donaldson, for a valuable consideration, sold, assigned, transferred, and delivered said debt to one S. J. Donaldson, one of the defendants herein.

It seems that about this time Florence Rucker and G. C. Donaldson intermarried, and on July 21, 1909, they indorsed and signed upon the back of the pledge contract the following writing:

"We, the undersigned, for value received, hereby sell, assign, and transfer all right, title, and interest in and to the within contract and to the stock therein described and set forth, with full power to have said stock transferred on the books of the company, as agreed on in said contract by Walter A. Trout to S. J. Donaldson."

The plaintiff alleges the subsequent assignment to himself of the debt and contract of pledge; that no part of the debt has been paid by the defendant Trout; and, further, that S. J. Donaldson, one of the defendants, claims to own an equity in the certificate of stock amounting to 6,950 shares. The usual prayer is made for a decree against the defendant Trout for the sum of $1,000 and interest, and that the stock be sold for the satisfaction of the decree.

In the answer of the defendant Trout he "admits that on or about the 8th of December, 1908, he borrowed from one Florence Rucker the sum of $1,000. In this connection the defendant alleges that he executed his promissory note therefor due June 8, 1909, payable to the said Rucker, and bearing interest at the rate of ten per cent per annum, and further admits that he delivered to Rucker at the time of the execution of the contract a certificate for 20,000 shares of the capital stock of the Portland Collapsible Box Company for the purposes set forth in said contract; that said contract was executed and the said stock certificate delivered solely as security for the payment of the promissory note mentioned in paragraph 1 of this answer." Otherwise the defendant Trout denies every allegation of the complaint. Further, in his answer the defendant Trout alleges that on July 23, 1909, he was ready, willing, and able to pay the full amount due on the promissory note described, and on that day he duly tendered to Florence Rucker, also to S. J. Donaldson, mentioned in the complaint, the full amount, with all accrued interest due upon the said promissory note, and demanded the return to him of the certificate for the said corporate stock. It will be noted in passing that he does not allege what amount of money he tendered at the time mentioned. He further states "that long prior to the commencement of this suit the owner and holder of the aforesaid promissory note surrendered, canceled, and delivered up the said note to the defendant, and the said note was then and there satisfied, discharged, and canceled." He prays that the plaintiff take nothing by this suit, and further prays an affirmative order of the court directing and requiring the plaintiff to deliver up the certificate for 20,000 shares of the capital stock of the company. The new matter in Trout's answer is traversed in the reply. The answer of the

defendant S. J. Donaldson asserts title in himself to 6,950 of the 20,000 shares named in the certificate of stock, and alleges that at the time he transferred the note and contract of pledge to the plaintiff he gave the latter notice of that claim. The new matter in the answer of the defendant S. J. Donaldson is not controverted by any one, either the plaintiff or the codefendant Trout, so far as we can discover from the transcript or abstract of record before us. After a trial on the issues involved, the circuit court rendered a decree according to the prayer of the complaint, directing a sale of the 13,050 shares of the stock owned by Trout to be made first to satisfy the decree, and, if that were insufficient, that the 6,950 shares belonging to Donaldson be next sold. The defendant Trout alone appeals.                         AFFIRMED.

For appellant there was a brief over the names of *Messrs. Collier & Collier* and *Mr. A. E. Clark,* with an oral argument by *Mr. Clark.*

For respondents there was a brief over the names of *Mr. G. Evert Baker* and *Mr. L. E. Huntsman,* with an oral argument by *Mr. Baker.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The plea of tender made by the defendant Trout can avail him nothing in this suit, for the reason that he does not state the amount of money which he tendered to Donaldson on he date he mentions. To make the plea of tender effectual, the amount tendered must be stated, because without this it is impossible for the court to reach the conclusions which the pleader draws that the full sum was tendered. The allegation of the answer that the money tendered was the full sum due, amounts only to a conclusion of law. ·The fact of the exact amount tendered must be stated in order for the court to draw the same conclusions that the pleader has reached in

his statement: *Goss* v. *Bowen,* 104 Ind. 207 (2 N. E. 704) ; *Dickerson* v. *Hayes,* 26 Minn. 100 (1 N. W. 834) ; *Knight* v. *Abbott,* 30 Vt. 577; *Chase* v. *Welch,* 45 Mich. 345 (7 N. W. 895). Moreover, the defendant Trout does not in his answer give the court sufficient data by which the balance due could be calculated even if his allegation in that respect was sufficient, for although he admits giving a note on the 8th day of December, maturing June 8th following, and that the note bears interest at the rate of ten per cent per annum, he does not state whether the note was to bear interest from date or from maturity. Hence, if we were permitted to compute the sum then due when the tender was made, as alleged, there is not sufficient material in the answer to enable us to reach a correct conclusion on the matter. As to the tender, we are satisfied that the same result must be reached upon the merits, for although on July 23, 1909, the defendant Trout offered in writing to pay S. J. Donaldson $1,063 without stating to what the payment was to be applied and demanding that the certificate of sock be delivered up to him, still the evidence shows that he was not then in position to have made good his offer of payment, even if it had been accepted. He says himself that he had not the money, and that he had only negotiated with a friend to supply him the money. Even this friend does not say that he had the money where it could be immediately furnished, but that he would have had to make further arrangements for it.

2. Hence, we think that, although the writing itself may have dispensed with the immediate offer of the money in specie, yet it must have been made in good faith, and that it would not dispense with the defendant's actual ability and readiness to pay. the money. In short, the effect of the conduct of the defendant Trout on that subject, as disclosed in the evidence, was in reality a mere

pretense or skirmish for advantage. A strong presumption that the defendant Trout was not acting in good faith when he made the offer in writing is drawn from the fact that he has not brought the money into court so as to keep the tender good.

Conceding, without deciding, that an issue is raised as to the ownership of the defendant Donaldson in 6,950 shares of the stock in question, we think his ownership is sustained by the weight of the testimony on the merits of that controversy.

3. We think the main question in this ·case should be decided according to the maxim that equity regards the substance rather than the form.   ·

"By force of this principle, equity goes behind the form of a transaction in order to give effect to the intention of the parties either to aid an act abortive at law because formally defective or to impose a liability as against an evasion by a formal concealment of its true character." 16 Cyc. 134.

This general principle is further illustrated by the following authorities: *Texas* v. *Hardenberg,* 10 Wall. 81 (19 L. Ed. 839) ; *Craig* v. *Leslie,* 3 Wheat. 578 (4 L. Ed. 460) ; *Campbell* v. *Freeman,* 99 Cal. 546 (34 Pac. 113) ; *Dodd* v. *Wilson,* 4 Del. Ch. 114, 408; *Sandeford* v. *Lewis,* 68 Ga. 484; *Pomeroy* v. *Benton,* 57 Mo. 551; *Hardin* v. *Emmons,* 24 Nev. 329 (53 Pac. 854) ; *Stockton* v. *Central R. Co.,* 50 N. J. Eq. 73 (24 Atl. 964: 17 L. R. A. 97) ; *Meier* v. *First Nat. Bank,* 55 Ohio St. 460 (45 N. E. 907) ; *Frink* v. *Cole,* 10 Ill. 339; *Bennett* v. *Minott,* 28 Or. 339 (39 Pac. 997: 44 Pac. 288). With this rule in mind, let us examine the facts as disclosed by the testimony.   ·

4. S. J. Donaldson became the owner of the note and its accompanying collateral by virtue of the indorsement of the payee and her then husband, G. C. Donaldson. Being thus in possession of the note, and it having matured and become past due, assuming, perhaps, that

he could foreclose the mortgage by its terms, he took the note and delivered it to the defendant Trout, who was at the time secretary of the corporation, and demanded that, in accordance with the letter of the collateral contract, he should transfer the 20,000 shares named in the certificate to the defendant Donaldson. Trout took the note, and said, in substance, he would attend to it soon, but, instead of transferring the stock, he made the offer in writing to which allusion has already been made, although he retained possession of the note. Trout contends that the surrender of the note extinguished not only the note itself, but also the debt which it represented, and many authorities are cited on that subject. Throughout all of them, however, runs the element that it must be intended by the parties at the time that the debt should be extinguished. All the circumstances of this case show that no such intention can be derived from the conduct of either of the parties. Donaldson was evidently attempting to foreclose the pledge and realize upon the security, and not to discharge the debt until that end was accom- is shown by his offer at a subsequent time on the same plished. That Trout did not so intend the transaction day to pay the money, evidently upon that debt, although it is unspecified in his offer. We conclude that at least in equity the debt itself was not extinguished.

5. Being in possession of the pledged property, after default in payment of the debt for which the stock was pledged, S. J. Donaldson had a qualified property in the stock: *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90: 75 Am. St. Rep. 564) ; *Swank* v. *Elwert,* 55 Or. 487 (105 Pac. 902). Being the owner of the debt itself and having this qualified property in the pledge, Donaldson could convey that to the plaintiff either as the absolute owner of the same or so as to give him authority to collect it for the benefit of Donaldson. We think the acts of the parties,

as detailed in the testimony, and their intent to be drawn therefrom, show that the property was regularly transferred to Proebstel for the purpose of enabling him to collect it for the benefit of the defendant Donaldson, and that for the purpose of this suit Proebstel stands in the same right that his grantor Donaldson stood.

On the merits, Proebstel is shown to be acting in good faith for the reason that he had another cause of suit against said Trout in connection with stock in that corporation, and it was thought best to include the two in the same complaint in the first instance. From a legal standpoint, as well as from the substantial equities of the case, we think the defense of the defendant Trout is without merit, and the decree of the court below should be affirmed.                                          AFFIRMED.