Argued November 24, affirmed in part, remanded with directions
December 15, 1975, reconsideration denied January 14, petition
for review denied February 18, 1976

LEKAS, *Respondent, v.* LEKAS (No. 340-121),
(CA 4761), *Appellant.*
543 P2d 308

*Warren C. Deras,* Portland, argued the cause for appellant. On the brief was Gary J. Lekas, Portland.

*Ralph Bolliger,* Beaverton, argued the cause for respondent. With him on the brief were Myatt, Bolliger, Hampton & Tarlow, P.C., and Robert P. Bell, Beaverton.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

## LANGTRY, J.

Husband in a marriage-dissolution decree of 1969 appeals from a circuit court denial of his motion to modify the decree by terminating child sup-

port payments for one child. The motion was grounded upon the child's having attained 18 years of age majority under ORS 109.510, which was amended by Oregon Laws 1973, ch 827, § 14, to lower the age of majority from 21 to 18. Four assignments of error relate to husband's contention that the amendment to the statute freed him of the obligation to support until age 21 under the provisions of a property settlement agreement made a part of the decree. The other assignment is that the court erred in allowing wife attorney fees.

In the 1969 property settlement agreement—made a part of the decree—it was provided that *"support shall continue as to each child until age 21, or until married or otherwise emancipated,* whichever event occurs first." (Emphasis supplied.) In October and November 1974 there were: (1) a contempt citation against husband for nonpayment and (2) motions by him for modification which culminated in a stipulation and amended order of January 27, 1975 which, inter alia, raised the amount of support for each child from $87.50 to $112.50 per month. The motions at bar were made in 1975 on the part of wife for contempt for failure to pay, and on part of husband to terminate support payments for the son James on May 3, 1975, his 18th birthday. The contempt proceeding was dismissed because husband paid up before the hearing, and the husband's motion for termination of support was denied, and $135 on account of attorney fees for wife was allowed in that connection.

(1) We treat the first four assignments together. The husband's basic argument is that James was "otherwise emancipated" by the legislative Act

lowering majority to age 18. A "saving clause" was included as Section 84 of that Act. Inter alia, it provides:

"* * * * *

"(2) Except as provided in subsection (3) of this section:

"(a) Nothing in this Act affects an act done, a proceeding begun, an order, decree or judgment entered, a right accruing, accrued or acquired, or a liability, duty or obligation incurred, before the effective date of this Act, under the law then in effect.

"(b) A reference to majority, minority, age of majority or words of similar intent in an order, judgment or decree entered before the effective date of this Act shall be considered to be to the age of majority in effect when the order, judgment or decree was entered.

"(c) Unless a contrary intent is shown, any reference to majority, minority, age of majority or words of similar intent in an instrument made before the effective date of this Act shall be considered to be to the age of majority in effect when the instrument was made.

"(3) Nothing in this Act prevents the amendment of an order, decree, judgment or instrument to refer to the age of majority as amended by this Act if the order, decree, judgment or instrument:

"(a) Is in existence on the effective date of this Act;

"(b) Is subject to amendment by law; and

"(c) By its terms allows or does not prohibit its amendment.

"* * * * *." Oregon Laws 1973, ch 827.

The circuit court, after prolonged argument from counsel, said:

"* * * [T]hat Section 84 exempts this, case

from the application of the 1973 Act, and that it does not apply to children who were the subject matter of proceedings instituted prior to the effective date of the Act, which was October 5, 1973.

"That being the case, a child coming under Section 84 is the subject matter of support until age 21, and does not reach the age when his father no longer has an obligation for his support until he is 21 unless he is lawfully emancipated prior to that time. He is emancipated, in fact, by the circumstances of his self-sufficiency, but until he is self-sufficient or married during that time that he is a dependent child under the prior to 1973 Act, his father continues to have that obligation * * * *."

Counsel for father asked the court its interpretation of the stipulated order which came out of the October-November 1974 proceedings. The court replied:

"* * * The interpretation the Court places on the Act makes the Act prospective only and applies only to those children in marriage dissolutions in which the proceedings were instituted subsequent to October 5, 1973.

"In consequence, Mr. Harrington, the Court denies your motion for modification of the decree.

"MR. HARRINGTON: Would the Court explain to us, first, the effect of the order of November 1, 1974 [this is actually a reference to the amended order of January 1975 which was the culmination of the November 1974 proceeding], which we feel terminated the support of James effective May 3, 1975?

"THE COURT: * * * James has the status of a minor child by reason of the institution of the proceedings in 1969 * * * under the law then in effect and is a minor child until he is married or 21."

■ Paragraphs (2)(a), (b) and (c) of Section 84, supra, easily lead us to the same conclusion as that expressed by the circuit court in the first quotation from him, above, for we view these paragraphs as a clear expression of legislative intent. Subsection (3) of Section 84, supra, does not lead us as easily to the second conclusion expressed in the second quotation, but for reasons that follow, we think it was right.

■ Pressure on legislatures in recent years for allowance of an earlier age of majority has led to widespread lowering of that age to 18. Some states' acts have had saving clauses for situations like that at bar, and some have not. Frequent litigation of the nature of that at bar has been spawned by the acts. Court decisions in. this recent litigation often have turned upon the kind of language used in the preceding decree or contract upon which the ·decree was based. *See Eaton v. Eaton,* 215 Va 824, 213 SE2d 789 (1975), and *Paul v. Paul,* 214 Va 651, 203 SE2d 123 (1974).

More on point, we think, are California opinions we refer to, infra. In the June 18, 1973 minutes of Joint Committee on Alcohol and Drugs, which was the only legislative committee of the 1973 legislative session to which HB 3167 (which became Oregon Laws 1973, ch 827) was referred, it is noted that Paul Snider, Legislative Counsel, was instructed to pattern the saving clause on that of the California Act. Oregon's Act and California's do have similar, although not the same, saving clauses. The principal case which we referred to above is *Ganschow v. Ganschow,* 14 Cal 3d 150, 120 Cal Rptr 865, 534 P2d 705 (1975), as modified on denial of rehearing June 4, 1975. It came after several California Appellate Court decisions with divergent results. *In re Marriage of Phillips,* 39 Cal App 3d 723, 114 Cal Rptr 362 (1974), one of these,

had held that a clause much like that being considered at bar was changed by the new Act, and support terminated at age 18. *Ganschow* repudiated the *Phillips* decision, saying it "contravenes the legislative intent." 14 Cal 3d at 157, n 7. The court said:

"The overall result is the creation by section 25.1 of two classifications of child support obligations. One classification embraces those obligations based upon court orders entered prior to March 4, 1972 [the effective date of the California Act], which orders may continue in effect until the child reaches the age of 21 years. The second classification embraces all those child support obligations not embodied in pre-March 4, 1972 orders, which obligations terminate when the child attains the age of 18 years * * *." 14 Cal 3d at 158.

We construe the Oregon Act to attain the same result.

■ Husband argues, however, that inasmuch as there was a new order of support entered in the case at bar after the effective date of the Oregon Act the provisions of Subsection (3), Section 84, quoted supra, bring the new age of majority into play as of the date of the new order. This involves the second conclusion of the circuit judge, quoted supra. We do not find an expression of any such intention as husband argues for in Subsection (3). The over-all intention expressed in the preceding subsection to leave existing decrees and agreements in effect still prevails. The effect of Subsection (3) is that, where appropriate, changes may be made in an existing decree upon proper motion where the same is indicated by changing facts and agreements. Subsection (3) does not, ipso facto, change existing decrees and agreements. The California court in *Ganschow v. Ganschow,* supra, 14 Cal 3d at 157, n 8, came to the same conclusion, refer-

ring to *Atwell v. Atwell,* 39 Cal App 3d 383, 114 Cal
Rptr 324 (1974):

> "In *Atwell, supra,* the court properly rejected
> the argument that a pre-March 4, 1972 support
> order modified after the effective date of the age-
> of-majority legislation becomes an order or decree
> entered after March 4, 1972, and hence automati-
> cally terminates as the child reaches the age of
> 18. Sections 25.1 and 4704 clearly indicate that this
> was not the result intended by the Legislature."

It follows that we agree with the entire interpre-
tation placed by the circuit court on §§ 14 (ORS 109.-
510) and 84 of Oregon Laws 1973, ch 827.

■ (2) Husband contends that there was no stipu-
lation for the court to set attorney fees without evi-
dence of the reasonableness thereof, and there was no
such evidence; hence, the court's order allowing the
same must be reversed. In brief, wife's attorney
states:

> "* * * [P]rior to the hearing, Francis Har-
> rington, attorney for appellant, and Ralph Bollig-
> er, attorney for respondent, discussed the matter
> of attorney's fees and Mr. Harrington agreed that
> either he would stipulate that the trial court set
> attorney's fees without the necessity for testimony
> or that there would be a second hearing on the
> matter of attorney's fees. This was conveyed to
> the trial court before the commencement of the
> hearing. At the conclusion of the hearing, the
> court awarded attorney's fees to respondent. Al-
> though appellant's counsel argued that the statute
> did not allow an award of attorney's fees in such
> a proceeding, he made no objection to the award
> of attorney's fees based upon lack of evidence. This
> led respondent's counsel to conclude that, assum-
> ing the court had authority to make an award of
> attorney's fees, appellant acquiesced in the court's
> award without the necessity of presenting testi-

mony. Consequently, counsel for respondent did not seek to set a second hearing for determination of attorney's fees * * *."

What we find in the record, as distinguished from this representation in the brief, is that after the court indicated its ruling on the substantive motion it asked if there was anything further. Wife's attorney said:

"MR. BOLLIGER: There is the matter of attorney's fees that—

"THE COURT: The contempt problem has not come up yet?

"MR. BOLLIGER: —of attorney's fees on this hearing."

Long colloquy ensued, and counsel wound back into argument on the substantive motion, after which the court again indicated its ruling thereon, including the parts of the court's decision we have quoted in this opinion. Wife's attorney again brought up attorney fees, saying he did not think Mr. Harrington had stipulated. The court said, "Now, attorney fees, Mr. Harrington?" Mr. Harrington argued that attorney fees are only allowable where "minor children" are involved, and this child has now attained majority. The court terminated the argument by ruling against husband and allowing $135 on account of attorney fees. From this record, it is clear to us that wife's counsel did his best to get either a stipulation or evidence on the issue before the court, but his efforts were thwarted. In *Fery and Fery,* 20 Or App 581, 585-86, 532 P2d 1131 (1975), we indicated a strong reluctance to remand cases to the trial courts to remedy a defect like that here. Nevertheless, in this case it is justified, and we remand for entry of a new order on attorney fees, after stipulation or taking of evidence on attorney fees. If taking of evidence becomes necessary, we see no reason why the trial court should

not consider evidence of the extra and useless time and effort that has been involved in setting the amount thereof.

Affirmed in part, remanded with directions.