WIFE, W. and Daughter, W., Petitioners,

v.

HUSBAND, W., Respondent.

Family Court of Delaware,
New Castle County.

Submitted Dec. 4, 1979.

Decided Jan. 10, 1980.

John C. S. Frank, Newark, for petitioners.

Alfred J. Lindh, Wilmington, for respondent.

## PETITION FOR SPECIFIC PERFORMANCE

JAMES, Judge.

This action seeks specific performance of a property settlement agreement as it relates to child support. Petitioner, N.C.W., and respondent were married on March 2, 1957, and three children were born of this marriage: Amy,* born December 30, 1957; Barbara,* born April 9, 1961; and Carol,* born December 26, 1964. Thereafter, the parties separated on October 31, 1969, and executed a property settlement agreement on June 29, 1971, which established their respective property rights and provided that respondent pay support to the petitioner, N.C.W., for her support and for the support of their three minor children and, as and when each of the minor children became disqualified to benefit from the support and maintenance payable under the agreement, the amount of support and maintenance was to be reduced by one-third of the basic payment. Paragraph I–3(c) stated, "[a] child shall become disqualified from participating in support if he shall reach his majority, become emancipated, die or remarry." Paragraph II–10 stated, "[t]his agreement shall be interpreted and governed by the laws of the State of Delaware wherein both parties are presently domiciled." Although the age of majority was 21 when the agreement was executed, 1 *Del.C.* § 701 was subsequently amended, effective June 16, 1972, to reduce the age of majority from 21 to 18.

Barbara * reached her 18th birthday on April 9, 1979, and graduated from high school in June of 1979, and respondent contends that she became emancipated so that his obligation to support her under the terms of the separation agreement terminated. However, petitioners argue that the agreement implicitly incorporated the age of majority in effect at the time the agreement was executed and, therefore, respondent's obligation to support the children continues until each, in turn, reaches the age of 21.

The Court first interpreted this amendment to 1 *Del. C.* § 701 in *B. v. F.*, Del.Fam. Ct., No. 448 (March 25, 1975, Wakefield, J.), which also involved an action seeking specific performance of a separation agreement for support of the three children of a former marriage as well as a judgment for the amount of arrears thereon. The agreement which had been signed on June 25, 1965, and subsequently amended on July 2, 1968, provided, in part, that the husband pay to wife support for the three children, ". . . until each child shall become self-supporting, marries, dies, or attains the age of twenty-one (21) years." This agreement preceded the June 16, 1972 statutory reduction in the age of majority from 21 to 18 years and the Court, in ordering specific performance of the agreement by requiring the husband to pay support for the children until each attained the age of 21, noted that a section of this amendment to the statute provides:

"Section 4. The provisions of this act shall not be deemed to change the intent of instruments bearing date prior to the adoption of this act, and all such instruments shall be construed based on the law, as existing heretofore." 58 Del. Laws, Ch. 439.

Most other jurisdictions considering this question have held that a statutory change in the age of majority does not affect the pre-existing rights of a person and that child support payments are a matter of vested right. See generally, Annot., *Statutory Change of Age of Majority as Affecting Pre-existing Status or Rights*, 75 A.L. R.3d 228.

Maryland, in 1973, adopted a similar statute reducing the age of majority from 21 to 18 with a provision that the statute ". . . shall be construed only prospectively and shall not be applied or interpreted to have any effect upon or application to any event or happening occurring prior to the effective date of this Act . . . or to any . . . instrument in effect prior to the effective date of this Act." In *Monticello v. Monticello*, 271 Md. 168, 315 A.2d

---

* Pseudonyms have been used.

520 (1974), the Maryland Court of Appeals held that a lower Court's divorce decree entered prior to the effective date of the majority statute which provided that the father support his infant children required said support to continue until each reached the age of 21, noting:

> "As a consequence, we are prepared to hold that the use of phrases such as 'infant' child, 'minor' child, 'during infancy', 'during minority', 'until attaining majority', or 'until age of majority', in an agreement or in a decree relating to child support dated prior to 1 July 1973, must have meant support until attaining age 21, in the absence of a clear expression of contrary intent, since this is the only meaning which would reasonably have been within the contemplation of the parties at the time such an agreement was executed, or in a judge's mind when such a decree was entered." 315 A.2d at 523.

*Monticello* was subsequently cited with approval and followed in *Green v. Green,* 44 Md.App. 136, 407 A.2d 1178 (1979).

Reviewing decisions involving agreements and orders containing the alternate provision for termination of "becoming emancipated," as in the agreement presently before the Court, the better reasoned decisions hold that the support obligor's duty continues past age 18. In denying a father's motion to modify a divorce decree by terminating child support payments for a child who had turned 18, the Court in *Lekas v. Lekas,* 23 Or.App. 601, 543 P.2d 308 (1975), held that a statute reducing the age of majority from 21 to 18 years did not modify a prior property settlement incorporated into a divorce decree providing that a father support his child until 21, or until married or otherwise emancipated, whichever event occurs first, since the statute contained a clause providing that, "[n]othing in this Act affects an act done, a proceeding begun, an order, decree or judgment entered, a right accruing, accrued or acquired, or a liability, duty or obligation incurred, before the effective date of this Act, under the law then in effect." 543 P.2d 310.

*Ruhsam v. Ruhsam,* 110 Ariz. 326, 518 P.2d 576, supp. op. 110 Ariz. 426, 520 P.2d 298 (1974), involved a separation agreement incorporated into a divorce decree which provided that a father pay support for each of his children until emancipated by marriage, majority, or death, and the Court, in holding that he was required to continue the payments until each child reached the age of 21 even though a subsequent statute had changed the age of majority from 21 to 18 years, stated, "[i]n the interpretation of a contract effect should be given to the intention of the parties at the time the agreement was made" (518 P.2d at 578), and the Court determined that both parties had intended the word "majority" to mean 21 years of age. The Court specifically rejected the father's argument that majority is a status and not a vested right as being irrelevant to the determination of what rights vested in the mother under the terms of the separation agreement.

Perhaps the most cogent discussion of the question appears in *Paul v. Paul,* 214 Va. 651, 203 S.E.2d 123 (1974), where parents executed a separation agreement which established their respective property rights and provided that the father pay monthly child support for each of their three children until said children are 21, shall marry, enter or be inducted into the armed forces of the United States, become full-time gainfully employed or otherwise emancipated, and this agreement was incorporated into a final decree of divorce prior to the adoption of a statute which lowered the age of majority from 21 to 18 years. The father then petitioned for relief from further support payments to the wife for the two older children who had attained the age of 18 years, claiming that they had become "otherwise emancipated" under the agreement. The Court stated:

> "One of the basic rules of construction of contracts is that the law in force at the date of making a contract determines the rights of the parties under the contract. [citation omitted] The law effective when the contract is made is as much a part of the contract as if incorporated therein. [citation omitted]

"Another rule of construction that is pertinent here is that new laws, except as to matters of remedy which may be applied retrospectively, are usually presumed to be prospective and not retrospective in their operation.

\*        \*        \*        \*        \*        \*

"The agreement at issue was executed in November, 1969, when the existing law provided that a person attained his majority at age 21, a fact that was recognized and considered by the parties in their negotiations and in the agreement. The agreement not only provides for support of the complainant and the children, it also provides for settlement of other rights. . . .

"Clearly it was the intent of the parties to provide for the children both before and after the children attain their majority.

"We think it equally clear that the parties intended that support payments continue until age 21 unless emancipation under the then existing law occurs. Thus we conclude that the words 'otherwise emancipated' used in the agreement do not include emancipation by a change of law as was effected by Code § 1–13.42." 203 S.E.2d at 125, 126.

The June 29, 1971 agreement before this Court provided for the separation of the parties, custody and visitation of the children, support for petitioner and the children, college education of the children, disposition of real and personal marital property, payment of marital debts, and the general disclaimer of any further obligation or responsibility as between the petitioner and respondent. Based upon the above authorities, the Court finds that the parties intended for the children to be supported by the respondent until each, in turn, attains the age of 21. Therefore, a hearing shall be scheduled with respect to the relief requested by petitioners.

IT IS SO ORDERED.