Argued February 21, affirmed August 27, 1979

In the Matter of the Marriage of
EUSTERMAN,
*Respondent,*
*and*
EUSTERMAN,
*Appellant,*
*and*
EUSTERMAN,
*Respondent.*

(No. 48368, CA 12315)

598 P2d 1274

[718-a]

J. P. Graff, Eugene, argued the cause for appellant. With him on the brief was Larry O. Gildea, P.C., Eugene.

William E. Hurley, argued the cause for respondents. With him on the brief was Bernard, Hurley, Crawford, Hodges & Kneeland, Portland.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

[718-b]

RICHARDSON, J.

## RICHARDSON, J.

Father appeals an order modifying a decree of dissolution to require him to pay child support for the parties' four children after they each reach 18 years of age and are attending school. He makes several contentions regarding the modification: (1) that the court lacked authority to modify the decree respecting support for the child who had reached 18 years of age; (2) the court lacked authority to modify the decree respecting the three children who were under 18 years of age; (3) there was an insufficient change of circumstances to justify modification; (4) the court lacked jurisdiction to consider modification of the decree respecting the children not specifically included in the motion to modify; (5) the court erred in requiring support during months when the children would not be attending school; and (6) the court erred in awarding attorney fees to mother.

The parties were married in 1959. A decree of dissolution was entered in 1977. The parties have four children who were 14, 15, 16 and 18 years of age at the time of the modification proceeding. The original decree awarded custody of the children to mother and ordered father to pay $225 per month per child. On April 22, 1978, the oldest child reached 18 years of age and father discontinued support payments for that child. At that time the child was a senior in high school and subsequently graduated in June. He then enrolled in college with the intention of living on campus in a dormitory.

On June 19, 1978, mother filed a motion and affidavit asking that the decree be modified to provide support for the oldest child until the age of 21 if he was attending school and to increase the support for that child to $325 per month. In a memorandum of law in support of the motion, filed July 18, 1978, mother stated that at the time of the hearing she would ask for modification of the decree regarding support of all of the childen while attending school after their 18th

[719]

birthdays. Hearing was held on the motion on August 16, 1978.

Father moved to dismiss the motion for modification on the ground the court lacked authority to modify the decree to provide for support after a child's 18th birthday. He also objected to any evidence regarding the three minor children on the ground that modification respecting support for them was not included in the motion.

After hearing, the court modified the decree to provide that "child support for all four children shall continue to age 21 so long as any such child is a child attending school," and "[i]f a child is attending school during the regular school year, support payments shall nevertheless be made for twelve months—from September through August." The court declined to increase the support.

Father contends the court lacks authority to modify the decree respecting the oldest child. He concedes our decision in *State ex rel Wick v. Wick,* 37 Or App 125, 586 P2d 400 (1978), is to the contrary but argues we should reexamine and overrule that decision. He further contends, if the court had authority to modify the decree there was not a sufficient change of circumstances to justify the modification.

The issues raised in this appeal involve the means, mechanics and authority to order a noncustodial parent to pay support for a child that is between 18 and 21 years of age and attending school. The problem arose in 1973 by enactment of ORS 109.510 which reduced the age of majority from 21 to 18. Before 1973, child support could be ordered paid until the child reached majority, *i.e.,* 21. When the legislature reduced the age of majority it had to determine if the child support obligation would expire at 18 or would continue. It expressed its intent in ORS 107.108.

"(1) In addition to any other authority of the court, the court may provide for the support or maintenance of a child attending school:

"(a) After the commencement of a suit for annulment or dissolution of a marriage or for separation from bed and board and before the decree therein;

"(b) In a decree of annulment or dissolution of a marriage or of separation from bed and board; and

"(c) During the pendency of an appeal taken from all or part of a decree rendered in pursuance of ORS 107.005 to 107.142, 107.260, 107.405, 107.425, 107.445 to 107.520, 107.540, 107.610 or this section.

"(2) An order providing for temporary support pursuant to paragraph (c) of subsection (1) of this section may be modified at any time by the court making the decree appealed from, shall provide that the support money be paid in monthly instalments, and shall further provide that it is to be in effect only during the pendency of the appeal. No appeal lies from any such temporary order.

"(3) If the court provides for the support and maintenance of a child attending school pursuant to this section, the child is a party for purposes of matters related to that provision.

"(4) As used in this section, 'child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment."

Although the statute is inartfully drafted, the court must attempt to implement the legislative intent.

## I

ORS 107.108 obviously authorizes trial courts to provide in a dissolution decree for child support during the 18 to 21 period if a child attends school. It appears that some trial courts routinely include such a provision in dissolution decrees. *E.g., Grove and Grove,* 280 Or 769, 771, n 1, 572 P2d 1320 (1977). Other trial courts seem to routinely leave the original decree silent on this point, expressly or impliedly retaining jurisdiction to consider the post-18 support issue when the child or children are closer to college age. *E.g.,*

[721]

Columbus and Columbus, 31 Or App 811, 814, n 5, 571 P2d 565 (1977), *rev den* (1978).

Situations will arise where such support, if to be ordered at all, must be provided for in the original decree. For example, in *Miller and Miller,* 21 Or App 253, 534 P2d 512 (1975), at the time dissolution was ordered the parties' twin sons were 20 years old and attending college. Obviously, the support obligation of the noncustodial parent had to be resolved then and there rather than in any subsequent modification proceeding.

■ However, in most dissolution cases it is likely that the parties' children will be younger than college age. We conclude the better practice would be to order in the original decree that child support will continue between the age of 18 to 21 if the child or children attend school within the meaning of ORS 107.108. That statute authorizes the court to extend the duty to support beyond what is otherwise statutory majority; it does not create a separate support obligation. Thus, just as it would be generally inappropriate to order that child support will terminate at age 15, it would be generally inappropriate to order that child support will terminate at age 18. The only difference is that after age 18 support liability is contingent on an additional fact—the child's attending school. But we do not think that one difference is sufficient justification for not usually providing in the original dissolution decree for the maximum possible duration of child support contemplated by the legislature.

II

■ An original decree may order post-18 support, but the child does not in fact attend school after its 18th birthday. Or if the child does attend school one party or another may want an increase or decrease in the amount of support because specific facts and figures are available at that time that were unavailable at the time of the original decree. Or the original decree may

[722]

have left the question of post-18 support open, *Columbus and Columbus, supra,* and the child does attend school. In all of these situations, the trial court is going to confront the possibility of modification proceedings, to which we now turn.

As for authority to modify, we hold that courts have jurisdiction and authority to modify to provide for post-18 support at any time until the child reaches age 21. To explain this conclusion requires both historical analysis and statutory construction.

■ For many years former ORS 107.100(1)(b) authorized courts to order child support for minor children "as may be just and proper for [the noncustodial parent] to contribute toward the nurture and education of such children." Former ORS 107.100(1)(b) has since been repealed and replaced by ORS 107.105(1)(b) which frames the obligation of the noncustodial parent as being "to contribute toward the support and welfare of such children." There is no reason to think that the change of wording from "nurture and education" to "support and welfare" was intended as a change in substance. Thus, it has long been and remains the policy of the State of Oregon to consider a child's educational needs in establishing child support. *See Briggs v. Briggs,* 178 Or 193, 165 P2d 772, 166 ALR 666 (1946); *Jackman v. Short,* 165 Or 626, 109 P2d 860, 133 ALR 887 (1941).

Under the former statutory scheme, the courts experienced little difficulty in giving effect to that policy. The children of divorced parents were regarded as informal wards of the court until they reached majority. *State ex rel v. Casey,* 175 Or 328, 153 P2d 700, 172 ALR 862 (1944); *Hertzen v. Hertzen,* 104 Or 423, 208 P 580 (1922); *Mack v. Mack,* 91 Or 514, 179 P 557 (1919). There was no question that courts had continuing authority to provide for the educational or other needs of their wards. *Sachs v. Sachs,* 145 Or 23, 32, 25 P2d 159, 26 P2d 780 (1933).

■ The complication we now confront originated in 1973 when the legislature lowered the age of majority. ORS 109.510. Given that the law provided that a court could only order child support to be paid for *minor* children, the question arose of whether the change in age of majority meant support could continue past age 18. The legislature responded by adopting ORS 107.108. Regardless of the imperfection in its wording, we think the intent is clear: children of parents of a dissolved marriage who are between 18 and 21 and actually attending school will continue to be treated for child support purposes on substantially the same basis as they had under prior law. In other words, the court has continuing authority, by appropriate modification proceedings, to provide for their support as long as they were eligible.

The wording of ORS 107.108 thus creates a possibility of instability of a decree. A child during his 18th and 19th year might not attend school. Under ORS 107.108 the noncustodial parent would have no duty of support that could be enforced by way of an original or modified decree. But the same child might then become a full time student during his 20th year. Under ORS 107.108 the occurrence of this event could reactivate the noncustodial parent's legal duty to support. Noncustodial parents might prefer a regimen in which the limits of their obligation was not dependent on such external events. But ORS 107.108 represents a clear legislative judgment that a child's need for education support up to age 21 is more important than guaranteeing noncustodial parents certainty about the existence or extent of their support obligation for the three years their children are between 18 and 21.

■ The historical analysis persuades us to adhere to and reiterate our holding in *State ex rel Wick v. Wick, supra:* trial courts have jurisdiction to order modification of child support for any child between 18 and 21 who is attending school regardless of whether the child is 18, 19, or 20 years old when the application for

modification is made. We now extend that rule by holding that trial courts also have jurisdiction to order support for the 18 to 21 period even though the child in question is under 18 years of age.[1]

It is argued that *State ex rel Wick v. Wick* is inconsistent with *Mallory and Mallory,* 30 Or App 533, 567 P2d 1051 (1977). In *Mallory* the original dissolution decree, entered after the age of majority had been reduced to 18, provided that the noncustodial parent was to pay child support so long as the children were minors, i.e., until they were 18. When the younger child reached 18 the noncustodial parent moved for an order that there was no further support obligation under the decree. The custodial parent and the child argued the support continued pursuant to ORS 107.108. In holding the noncustodial parent was entitled to such an order, we stated:

> "* * * [ORS 107.108] is not self-executing. Such an order [*i.e.,* to pay support for a child between 18 and 21 and attending school] must appear in the decree either as issued or as modified. Absent an order, a parent has no obligation under the dissolution laws to support an adult child." 30 Or App at 535.

We did not hold that a court lacks jurisdiction to order modification beyond a child's 18th birthday. Indeed, there was no occasion to consider the question because neither the custodial parent nor the child moved for modification. There is no implication in *Mallory* that the court lacks the authority to order such a modification. We simply held that the noncustodial parent need not pay support under ORS 107.108 unless ordered to do so. *Mallory* is not inconsistent with *Wick.*

---

[1] In arriving at this conclusion we are cognizant of the language in *Grove and Grove,* 280 Or 769, 572 P2d 1320, n 1 (1977):

> "It is not clear whether ORS 107.108 sanctions the inclusion of such a provision in a dissolution decree at a time when the children have not yet reached the age of 18. *See especially* the definition in subsection (4). Neither party has raised that question in this case, and we express no opinion upon it." 280 Or at 771.

Since the issue is raised in this case we are required to express an opinion upon it.

## III

Father contends that there was insufficient proof of change of circumstances to authorize modifying child support by extending it—either as to his 18-year-old son about to start college, or as to his three younger children aged 14 to 16. We can dispose of father's contention as applied to his oldest child easily. We hold that beginning to attend school within the meaning of ORS 107.108 (or being accepted to attend plus intending to attend) is a change of circumstances.[2] To the extent it is inconsistent with this holding, *Voiss v. Voiss,* 28 Or App 581, 559 P2d 1317 (1977) is overruled.

Given that the onset or imminence of school attendance is a change of circumstances, it does not necessarily follow that child support should automatically be extended potentially to age 21. The child in question might receive a full tuition, room, board and spending money scholarship or be planning to attend a military academy at literally or virtually no expense. The onset or imminence of school attendance merely authorizes further inquiry on the merits; it does not necessarily determine the merits.

Father's three younger children (ages 14 to 16) present a different question; the argument that changed circumstances are necessary to modify by extending child support for them appears more substantial.[3] The general rule is that modification of a dissolution decree can only be ordered upon a finding that the circumstances have materially changed since

---

[2] Conversely, it is equally apparent that ceasing to attend or intending to cease to attend school is also a change of circumstances.

[3] An argument can be made that *extending* child support to go up to 21 in accordance with ORS 107.108 is not really a *modification* of a dissolution decree. However, for purposes of the most ready analogy—spousal support—an extension of the support obligation is manifestly a modification of the decree. Moreover, requested extension of a child support is presented to a court, procedurally, by a motion to modify, and resolved by a court, procedurally, by an order granting or denying modification. We thus here assume, but do not decide, that ordering extension of child support in accordance with ORS 107.108 is a modification of a dissolution decree.

the time of the decree or last modificaiton. However, that rule is neither statutory nor jurisdictional. It is a judge-made rule and as such we are free to fashion exceptions or to relax its requirements in appropriate situations. *See Deffenbaugh and Deffenbaugh,* 286 Or 759, 596 P2d 966 (1979); *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960).

We conclude that the requirement of proof of changed circumstances is inapplicable to the question of modifying child support by extending it potentially to age 21 for father's three younger children. Indeed, we hold that preliminary proof of changed circumstances is *generally* inapplicable to the question of modifying by extending child support to age 21 for any child so young as not yet to be in or on the threshold of college.

The test is whether the question of 18 to 21 child support was or was not previously litigated on the merits. In a case like *Miller and Miller,* 21 Or App 253, 534 P2d 512 (1975), where the children were 20 years old and in college at the time of the initial dissolution decree, the question of 18 to 21 support was necessarily litigated at the time of the initial decree. The change-of-circumstances rule would thus apply in any subsequent modification proceeding.

But most cases will likely involve younger children and it will not ordinarily be possible to fully litigate the question of 18 to 21 support at the time of the initial decree. For example, in *Voiss v. Voiss, supra,* a child for whom 18 to 21 support was awarded had been awarded a college scholarship in excess of $3,000. This kind of information should be part of the support calculus. Annotation, 56 ALR2d 1207, 1209 (1957). However, this kind of information would simply not be available at the time of the dissolution decree if, say, the child was then 10 years old. In such situations, where the question of 18 to 21 support was not fully litigated at the time of the original decree, we hold the change-of-circumstances rule is not applicable in a

[727]

subsequent modification proceeding to extend child support in accordance with ORS 107.108.

## IV

We can foresee one other possible problem arising in modification proceedings from a literal reading of ORS 107.135(2), which provides:

"The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion."

A decree may order post-18 support if the child attends school, and after that child's 18th birthday he or she does not attend school. A variety of interrelated questions might arise. Does ORS 107.135(2) make the noncustodial parent liable for post-18 support even though the child is not attending school until modified by court order? If the noncustodial parent is aware the child is not attending school, can he or she unilaterally stop making support payments? If the noncustodial parent was unaware the child was not attending school and thus continued making support payments, can the noncustodial parent sue to recover those payments?

Some of these problems would be minimized by including a provision in the decree requiring the custodial parent to notify the noncustodial parent if a child does not attend or ceases to attend school within the meaning of ORS 107.108. Given the "full equity powers" of the court, ORS 107.405, we think it can and should include such a provision. *See also,* ORS 107.415.

But some problems might still arise, especially since in *Walker v. Walker,* 26 Or App 701, 706, 554 P2d 591, *rev den* (1976), we held that children of

[728]

divorced parents "are entitled to receive the level of support set by the prior decree unless and until changed by court order." We conclude, however, that the *Walker* rule and ORS 107.135(2) are not applicable to post-18 support obligations. Support payments for a child over 18 attending school ordered pursuant to ORS 107.108 are a contingent obligation. If the contingency which triggers the obligation of extended support—school attendance—does not occur or ceases to occur, the support payments otherwise due thereafter do not accrue and are not a judgment within the meaning of ORS 107.135(2). While it would be the better practice and maximum protection for all concerned to always obtain a court order formally modifying the noncustodial parent's obligation, in no event is the noncustodial parent liable under ORS 107.108 for the support of a child that does not attend or ceases to attend school.

## V

Father argues that 18 to 21 support, if ordered, can only be imposed for the school year, not the calendar year. His argument is: ORS 107.108(1) states a court may provide for support of a child attending school; ORS 107.108(4) defines a child eligible for support as one "regularly attending" school; therefore, the authority created by ORS 107.108(1) is to order support during periods of regular attendance, *i.e.,* during the school year. It would be a distortion of the statutory language to interpret "regularly attending" to mean "literally attending." In common understanding a student who has registered to attend the next succeeding academic term is still considered a student during the various recesses between terms. In addition, schools follow a variety of academic schedules, *i.e.,* quarters, semesters, etc., and it would place an intolerable burden on courts to enforce support payments that are measured by literal school attendance. The child's needs for support are not necessarily terminated when the school term ends. It is appropriate to calculate the support obligation for a child attending

[729]

school on a calendar year basis. The court specifically did so in this case and we concur.

## VI

Father argues that he should not be ordered to pay support after the children reach 18 because he wants the privilege of discussing with them their choice of educational institutions and the amount of money needed for their educations. He also objects to paying any educational support money to the mother. He testified he would prefer voluntary contributions directly to the child attending school.

We are not aware of any rule of law that would prevent father from discussing his childrens' educational plans and programs with them; indeed, that is to be encouraged. But as a noncustodial parent, father has no legal right to control his childrens' education. As for payments directly to the child attending school, courts in other states have ruled that a noncustodial parent's binding agreement with a child to contribute toward the child's education is a factor to be considered when a court is fixing the parent's child support obligation. Annotation, 56 ALR2d 1207, 1209 (1957). But that rule would not aid father here because the "voluntary contributions" approach he would prefer is not in any way a binding assurance that his children will receive assistance for college expenses.

Ordinarily child support is paid to the custodial parent and the custodial parent utilizes that money to carry out the obligation to care for the child. There may be circumstances where a child is regularly attending school and living away from the custodial parent's home. In that instance it may be more appropriate to order the support payments made to the child. ORS 107.108(3) provides that for the purposes of 18 to 21 support "the child is a party for purposes of matters related to that provision [of the decree]." The normal incidence of a person being a party is that he is entitled to receive the support on his or her own behalf. Although the tenor of the domestic relations

[730]

statutes is that the child support is paid to the custodial parent, *e.g.,* ORS 107.105(1)(b), we conclude that courts have authority to order support for 18 to 21 year old children attending school to be paid to the child. If the child is not being supported by living in the custodial parent's home and the support payments are not needed by the custodial parent to provide nurture and care for the child attending school, the court may, in its discretion, order the support to be paid either to the child or the custodial parent. In this case the court ordered the support paid to mother. Based on the information available, we arrive at the same conclusion.

## VII

Father contends the court had no authority to modify the decree respecting the three younger children who were not specifically designated in the mother's motion. He argues that under ORS 107.135(1) the authority exists to modify only "upon the motion of either party and after service of notice on the other party in the manner provided by law for service of summons." The essence of father's argument is that because he was not personally served with a motion for modification respecting the three younger children the court was without authority to entertain the motion. The memorandum, served on his counsel, which notified the court and father that mother would request modification, was not sufficient, he contends, to qualify under ORS 107.135(1) or 15.080(8). In addition, he argues the mother did not indicate the changed circumstances in the memorandum and father thus had no notice of the grounds of the requested modification.

■ Under ORS 107.135, the court has continuing jurisdiction over the subject matter of future support payments and retains power to modify that portion of the decree. The fact that such modification can be made on motion filed in the original suit indicates that the court also retains jurisdiction of the parties. The

fact that the court has jurisdiction of the subject matter and the parties does not, however, authorize it to act without further notice. The question is not whether the court had jurisdiction but whether the father had notice.

The provisions of ORS 107.135(1), requiring service of notice, apply to the initiation of the modification proceeding thereby giving the adverse party adequate notice and an opportunity to appear. Father was given notice of the proceeding to modify the decree under ORS 107.135(1). Mother's memorandum notifying father that she intended to seek modification for the three remaining children is akin to an amendment of the motion or an amended pleading which may be served on a party's attorney.

Father was personally before the court on a motion to modify the decree and had actual notice nearly one month prior to the hearing that mother was seeking modification respecting all four children. It would be elevation of form over substance to require mother to personally serve father with additional notice of the proceeding. Furthermore, our conclusion that in this case proof of changed circumstances was not necessary disposes of father's objection that he had no notice of the changed circumstances mother intended to prove.

## VIII

Father argues that the trial court improperly considered information obtained by the court in the original dissolution proceedings. In the modification proceeding, which is the basis of this appeal, there was evidence of a trust fund created by the children's grandfather. Father's counsel described the trust to the court and his explanation was adopted by father during his testimony. Father's counsel indicated the trust may provide for funds for the children's education but that question was still "up in the air." The court noted that at the time of the dissolution proceeding, it was anticipated that funds would be available from the trust for the children's college education. The

court then noted that because the trust funds may not now be available this was a change of circumstances. Father argues that without a transcript of the prior proceedings introduced in evidence in this proceeding, the court could not consider information learned in the earlier proceeding.

In view of our determination that the change of circumstances rule is here inapplicable, we need not consider this claim of error. The questionable availability of the trust funds was one factor to be considered by the court in determining the amount of support for the oldest child who was over 18 and attending school. The court declined to increase the support as requested by the mother. She does not appeal that decision.

## IX

In his final assignment, father contends it was error to award mother $400 attorney fees. The parties stipulated that the court could set the attorney fees if they were properly allowed. Father argues that mother has sufficient liquid assets in the form of a savings account and the proceeds from sale of property to pay her own attorney fees. The decision to award attorney fees in a domestic relations proceeding is a matter committed in the first intance to the discretion of the trial court. In light of the disparity in earning power and family responsibilities, we conclude the court properly awarded attorney fees to mother.

Affirmed. Costs to respondent.