Argued and submitted December 14, 1979,
affirmed as modified February 19, 1980

In the Matter of the Marriage of
SMITH,
*Appellant,*
*and*
SMITH,
*Respondent.*

(No. 93818, CA 14447)

606 P2d 694

[635]

Michael J. Martinis, Salem, argued the cause for appellant. With him on the brief was Norman F. Webb, Salem.

Myron L. Enfield, Salem, waived appearance for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

ROBERTS, J.

**ROBERTS, J.**

Father appeals from an order modifying the decree of dissolution to require father to continue child support payments to his 18-year-old son as long as the son is "a child attending school within the meaning of ORS 107.108(4)."

The child is the natural grandchild and adopted son of father. It appears from the record that he was raised from childhood by his grandparents and adopted at about age 15 so that he could share the family name. In June, 1977, about a year and a half after the adoption, a decree was entered dissolving the adoptive parents' marriage. The decree required father to pay "on account of support for the minor child the sum of $250 per month until he reaches 18 or is earlier emancipated."

Prior to son's 18th birthday, which was on October 23, 1978, wife moved for an order modifying the decree to extend child support payments beyond age 18 to age 21 as long as the son was attending school.

Following a hearing on December 28, 1978, the trial court entered an order extending child support in the amount of $150 a month under the provisions of ORS 107.108(4).

This order was entered despite the judge's own reservations based upon testimony from the father and son that son refused to participate in visitations with his father. Father testified that, apart from two accidental meetings in crowded places, he had had only one successful visit with his son since the dissolution. The son verified this, testifying that he wished nothing to do with his adoptive father because his father had left his mother and because his father had embarrassed him by wearing a partially unbuttoned shirt during their one visit. The son, who attends bible college, deemed his father's behavior to be wrong.

[637]

Of the son's desire to receive support while wanting nothing to do with his father, the trial judge commented, "It's wrong. I think it's wrong. * * * I think the law requires me to continue support, so I have to." Earlier comments from the judge indicated that he felt compelled to this result by *State ex rel Wick v. Wick*, 37 Or App 125, 586 P2d 400 (1978).

Father contends that the controlling case is now *Eusterman and Eusterman*, 41 Or App 717, 598 P2d 1274 (1979), and that mother failed to show a change of circumstances justifying the extended support as required by that case. *Eusterman* is, in fact, the determinative case; however, father misinterprets it. That case was intended to clarify *Mallory and Mallory*, 30 Or App 533, 567 P2d 1051 (1977), and *State ex rel Wick v. Wick, supra,* both of which discussed the court's authority under ORS 107.108.

ORS 107.108 provides in relevant part:

"(1) In addition to any other authority of the court, the court may provide for the support or maintenance of a child attending school:

"* * * * *

"(b) In a decree of annulment or dissolution of a marriage or of separation from bed and board; and

"* * * * *

"(3) If the court provides for the support and maintenance of a child attending school pursuant to this section, the child is a party for purposes of matters related to that provision.

"(4) As used in this section, 'child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment."

In *Eusterman* we stated that, where a child is in or on the threshold of college, the onset or imminence of school attendance is in itself a change of circumstances, but that it does not automatically follow that

child support should be extended to age 21.[1] Noting that a child might receive a full tuition and expense scholarship, we held that

"* * * The onset or imminence of school attendance merely authorizes further inquiry on the merits; it does not necessarily determine the merits." 41 Or App at 726.

Here the record discloses that son, who is still living at home, began attending Western Baptist College in September of 1978 and that his college related expenses are in excess of $2,000 for a nine-month school year. There is nothing on the record to indicate that any of these expenses are defrayed by scholarships or other outside sources of money. Son did testify, however, that he had worked during high school and the previous summer. In answer to questions on cross-examination, he claimed that he was now unable to work during the school year because of the heavy course load that he carried.

Father demonstrated no substantial change in his ability to pay apart from the fact that he is now married to a woman with three minor children. This is not a sufficient basis for terminating the child support obligation, for, as we said in *Betts v. Betts*, 18 Or App 35, 523 P2d 1055 (1974), "* * * it must be presumed that the husband had in mind his obligation to his children by the first marriage when he assumed the further obligations of his second marriage. * * *" 18 Or App at 38.

Father argues that, because he is 59 and will have to retire at age 65 on a fixed pension, he should be relieved of his child support duties in order to allow him to save for his retirement. He claims that with his present obligations he is short $125 every month. Apparently, part of the cause of this deficit is the

---

[1] This situation is to be distinguished from that where the child is so young as not yet to be in or on the threshold of college. Under those circumstances, no showing of change of circumstances is necessary to modify the decree to provide for support to age 21. *Eusterman and Eusterman, supra,* 41 Or App at 727.

obligation of the new family and the recent purchase of a boat for $3,700 and swimming pool for about $600.

At the time of the original decree, the trial court stated in a letter opinion that there was not sufficient income to maintain the expenses of both households and that the parties "will, of necessity, have to find ways to economize." The fact that father, rather than economizing, has taken on the additional expenses of a new family and new material possessions does not amount to a change of circumstances requiring us to terminate child support.

We do, however, find that son's ability to work should be taken into consideration in setting the amount of support. We are unconvinced by son's testimony that he is unable to work during the school year in light of evidence on the record that he worked 20 hours a week during high school and maintained excellent grades. Under these circumstances, we find $100 a month to be a reasonable amount of support.

Father further contends that the support should have been denied because of the son's refusal to see him. As support for his position, father cites ORS 107.431(3) which provides

> "At any time after a decree of annulment or dissolution of a marriage or a separation is granted, the court may set aside, alter or modify so much of the decree relating to visitation of a minor child as it deems just and proper or *may terminate or modify that part of the order or decree requiring payment of money for the support of the minor child with whom visitation is being denied* after:
>
> "* * * * *
>
> "(3) A showing that the parent or other person having custody of the child or a person acting in that parent or other person's behalf has interfered with or denied without good cause the exercise of the parent's visitation rights." (Emphasis supplied.)[2]

---

[2] Prior to the passage of this statute, this court and the Supreme Court held that child support should not be terminated in response to violations of visitation rights. *See, e.g., Garrison and Garrison*, 28 Or App 297, 559 P2d 513 (1977); *Dooley and Dooley*, 30 Or App 989, 569 P2d 627 (1977); *Godfrey v. Godfrey*, 228 Or 228, 364 P2d 620 (1961).

Father argues that if support can be denied to an innocent child because of the custodial parent's interference with visitation, this case is even stronger for denying support because the grown child himself denies the noncustodial parent visitation rights.

Nowhere in ORS ch 107 is the court given jurisdiction to set visitation rights for a child past the age of majority. Therefore, if a court were to modify or terminate the support obligation based on refusal of a child past the age of majority to visit with his noncustodial parent, the court would be basing its decision not upon a violation of the decree, as would be the case under ORS 107.431(3), but upon a value judgment about the interaction between adults.

The noncustodial parent has a financial responsibility toward the children of the dissolved marriage, *Westby and Westby*, 30 Or App 431, 567 P2d 145 (1977), *Whitlow and Whitlow*, 25 Or App 765, 550 P2d 1404 (1976), a responsibility extended under the terms of ORS 107.108 until the child reaches 21 and a responsibility not contingent upon the child's attitude or actions toward the noncustodial parent.[3]

Affirmed as modified. No costs to either party.

---

[3] We are aware that there is no similar law in this state requiring parents who are still married to support their children past the age of majority while attending school. If this anomaly is to be changed it is a matter for the legislature.