CAMERON,
*Respondent-Cross-Appellant.*

*v.*

CAMERON,
*Appellant-Cross-Respondent.*

(Case No. 71-1445, CA 13460)

610 P2d 842

Charles G. Duncan, Eugene, argued the cause and filed the briefs for appellant-cross-respondent.

Michael F. Fox, Eugene, argued the cause for respondent-cross-appellant. With him on the brief was Hoffman, Morris, Van Rysselberghe & Giustina, Eugene.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

Tanzer, P. J.,* dissenting opinion.

---

*Appointed to Supreme Court January 21, 1980.

**TANZER, P. J.,** dissenting.

This case demonstrates that our practice of decision without opinion, a practice for which I remain an advocate, can go too far. In reviewing domestic relations cases de novo on the record, this court in recent years has properly shown deference to the trial courts in the interest of finality. We have tended to affirm without explaining our reasoning in an opinion unless something extraordinary is readily apparent.

Where an appeal is more than a request for us to slice the marital pie differently than did the trial court because the case presents hitherto unaddressed issues of broader significance, a decision without express reasoning fails to serve the bench, the bar and the public. This is such a case. It involves the nature of alimony and the effect of an unanticipated rate of inflation. It is not unique; the problems will return. It is better to explain ourselves now than to encourage repetitive litigation by deciding silently. This is how I would reason the case.

Mr. Cameron appeals and Mrs. Cameron cross-appeals from this order modifying the alimony provision of their 1971 divorce decree. The decree divided the spouses' property, awarded child support and custody of the children to Mrs. Cameron and also awarded $250 per month alimony to her until her death or remarriage. In 1978, she moved to modify her support to $600 per month. The trial court made no express findings, but modified support to $475 monthly. Mr. Cameron appeals the increase and Mrs. Cameron cross-appeals for a greater increase.

At the time of the divorce, the parties were 42 years of age and had been married for 21 years. They are now approximately 50 years old. Their two children are adult and the child support provisions have expired.

In 1971, Mrs. Cameron was successfully undergoing treatment for alcoholism and she has been in

remission since then. Also in 1971, she had surgery for uterine cancer. Her periodic checkups for cancer have been negative. She has also since undergone two operations for arthritis in her legs. Her doctor opines that due to the arthritis she is limited to a moderate amount of walking or standing. Mrs. Cameron testified that arthritis in all her joints has worsened progressively since the divorce. She is also a diabetic (whether from before or after the decree is unclear) and she controls it with insulin.

Mrs. Cameron did not work outside the home during marriage. Since the divorce she was regularly employed only during 1975, when she was a night manager at an alcohol treatment center. She is presently unemployed and she has not enrolled in any training or rehabilitative programs.

Since the decree, Mr. Cameron has remarried and contributes toward the support of his minor stepdaughter. His gross income has increased from roughly $14,000 to $25,000 per year. He and his new family have medical problems of their own. Since before the divorce, Mr. Cameron has had high blood pressure which is controlled by diet and medication. He also has back problems which restrict his duties as a dock superintendent for a trucking firm. His present wife also has back trouble. His stepdaughter requires regular opthalmic attention and is expected to need a corneal transplant soon.

Mrs. Cameron presented expert testimony from a labor economist to demonstrate that inflation has reduced the real income from her support payment by roughly 50 percent. Using the consumer price index as a guide, this witness testified that compared to a 1971 dollar, today's dollar is worth 53 cents. Thus, the buying power of Mrs. Cameron's support payment has dropped by roughly one-half since the time of the award. This witness also testified that Mrs. Cameron's relative lack of education, her age, and the time she

has spent out of the labor market leads him to conclude that she "has a low probability of being employable without gaining some kind of marketable labor market skills." Mr. Cameron's income has increased only slightly ahead of the rate of inflation. Taking into account increased deductions and tax liability, his real income has changed negligibly.

Support and custody provisions of divorce or dissolution decrees are subject to modification, ORS 107.135(1). As we most recently held in *Eusterman and Eusterman,* 41 Or App 717, 727, 598 P2d 1274 (1979), the discretion to modify them has been limited under the judicially created change of circumstances rule. The threshold issue in this case is whether the effects of inflation on Mrs. Cameron's need and Mr. Cameron's income and Mr. Cameron's intervening assumption of new marital obligations are sufficient changes of circumstances to trigger new judicial attention to their decree. I agree with the majority that they are.

We stated the applicable principles in *Ward v. Ward,* 41 Or App 447, 599 P2d 1150 (1979):

"Modification of alimony awards pursuant to change of circumstances should be governed by the same legal principles and judicial objectives as the award itself. The primary effect to be accomplished by a divorce or dissolution is the separation of the parties in a manner that enables each to continue his or her life as free as possible from entanglement with the other. *Slauson and Slauson,* 29 Or App 177, 562 P2d 604 (1977). Alimony or spousal support must be considered together with the other financial provisions of the decree. *Grove and Grove,* 280 Or 341, 344, 571 P2d 477, 280 Or 769, 572 P2d 1320 (1977). Particularly in a marriage of long duration where a spouse may be inferred to have foregone opportunity for occupational development, the primary objective of alimony, if circumstances permit, should be the achievement of financial self-sufficiency by the supported spouse and the eventual termination of dependency upon the other spouse. * * *"

The judicial objectives of any particular alimony award are not always evident, particularly years later when modification is sought. Whether an award is designed as a temporary assistance, to perpetuate support and dependency after a long-term marriage, or to compensate for the award of an indivisible business or property to the other spouse, or some combination of those objectives, often may be determined after the fact only by inference or conjecture. That is one more reason to regard the change-of-circumstances rule as a force for finality.

The award of alimony in this case was clearly intended to provide permanent support to Mrs. Cameron. The marriage had been of long duration and she was not foreseeably capable of full self-support. On the other hand, she was deemed possessed of the physical and emotional capability necessary to provide a home for their children and she received child support therefor. Even in 1971, it is unlikely that $250 was regarded as sufficient for her entire support. The child support payments, for example, helped provide housing for her as well as the children. In sum, then, Mr. Cameron was obliged by the decree to permanently contribute substantially to Mrs. Cameron's support.

As to Mr. Cameron, a purpose of the decree, as noted above in *Ward,* was to separate him from Mrs. Cameron and to enable him to continue his life as free from entanglement with Mrs. Cameron as possible. The decree freed him to make new financial and family commitments which did not interfere with his continuing obligation to contribute substantially to Mrs. Cameron's support. He has done so.

Inflation at a rate beyond what was immediately foreseeable at the time of the decree is a substantial change of circumstance. More to the point, it is a change which affects the continuing tendency of the alimony provision of the decree to effect its original purpose, *i.e.,* to permanently provide Mrs. Cameron with a substantial portion of her financial support. If

inflation has halved the purchasing power of $250 per month, then the mathematics have changed significantly and the decree should be adjusted to reflect that change.

Mr. Cameron's financial situation has also been affected. His income and his cost of living have increased correlatively to inflation. Mr. Cameron's assumption of new family responsibilities, an occurrence consistent with the objectives of the decree, is also a changed circumstance which is relevant to an alimony (as contrasted to child support) obligation. It affects substantially his ability to contribute to Mrs. Cameron's support.

The trial judge applied a formula which effectively maintained Mr. Cameron's payments in a direct ratio to the effect of inflation on both Mrs. Cameron's reduced purchasing power and Mr. Cameron's additional income. Accordingly, it was raised from $250 to $475 per month. I believe the trial court took proper factors into account, but, upon review de novo, I would find additionally that Mrs. Cameron is capable of contributing somewhat to her support and I would give weight to Mr. Cameron's obligations to his new family. Injecting those factors into the equation, I conclude that $375 per month is a more equitable sum for alimony and I would modify the order accordingly.