Argued June 27, affirmed August 8, 1977

# STATE ex rel BAKKE, *Appellant,*
## *v.*
# BAKKE, *Respondent.*
# (No. D-4397, CA 7657)
### 567 P2d 126

Lawrence R. Lucas, Jr., Portland, argued the cause and filed the brief for appellant.

Donald P. Roach, Portland, argued the cause for respondent. With him on the brief was Sidman & Smith, Portland.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

In the course of having their marriage dissolved, the parties entered into a property settlement agreement on May 4, 1973, which was incorporated verbatim into a decree of dissolution entered on May 7, 1973. The paragraphs of the property settlement agreement dealing with child support provided that the respondent-father should pay $140 per month per child and that "the support [payments] shall continue until such child becomes of legal age under the laws of Oregon *then in effect,* becomes emancipated, self-supporting or marries, whichever event shall first occur." (Emphasis supplied.)

On October 5, 1973, Oregon Laws 1973, ch 827, p 2417, took effect. Section 14 of that chapter, codified as ORS 109.510, provides:

"* * * [A]ny person shall be deemed to have arrived at majority at the age of 18 years * * *."

The legislature enacted a "saving clause." Section 84 of chapter 827, not codified, provides:

"* * * * *

"(2) Except as provided in subsection (3) of this section:

"(a) Nothing in this Act affects an act done, a proceeding begun, an order, decree or judgment entered, a right accruing, accrued or acquired, or a liability, duty or obligation incurred, before the effective date of this Act, under the law then in effect.

"(b) A reference to majority, minority, age of majority or words of a similar intent in an order, judgment or decree entered before the effective date of this Act shall be considered to be to the age of majority in effect when the order, judgment or decree was entered.

"(c) Unless a contrary intent is shown, any reference to majority, minority, age of majority or words of similar intent in an instrument made before the effective date of this Act shall be considered to be the age of majority in effect when the instrument was made.

"* * * * *."

On August 17, 1976, the parties' eldest daughter

reached the age of 18, and the father ceased making support payments on her account. The mother, contending that the payments should continue until the child reached 21, commenced these proceedings. The trial judge ruled that the duty to support terminated at age 18. We affirm.

In *Lekas v. Lekas,* 23 Or App 601, 543 P2d 308 (1975), Sup Ct *review denied* (1976), we considered the effect of this "saving clause" on a divorce decree entered in 1969, before the effective date of the lower age of majority. We there affirmed a denial of the husband's motion to modify the 1969 decree by terminating support for a child who reached age 18. The language used in that decree stated:

"* * * '*[S]upport shall continue as to each child until age 21, or until married or otherwise emancipated* * * *'* (Emphasis supplied.) * * *." *Lekas v. Lekas, supra* at 603.

We rejected the husband's contention that his son was "otherwise emancipated" at age 18 according to the new law. We relied upon § 84(2)(a) and (b) of the "saving clause" and applied the former age of majority—age 21. *Lekas v. Lekas, supra* at 604, 607.

However, the Oregon legislature specifically provided for situations in which the parties expressed an intent to apply the new age of majority rather than the existing age of majority. Section 84(2)(c) of the Act states:

"*Unless a contrary intent is shown,* any reference to majority, minority, age of majority or words of similar intent in an *instrument* made before the effective date of this Act shall be considered to be the age of majority in effect when the instrument was made." (Emphasis supplied.)

This section has direct application to the facts here. The words "legal age" presumably refer to the age of majority. Thus, the intent of the parties to this property settlement agreement may be shown to rebut the presumed age of majority.

[ 348 ]

■ Unlike the child support provision in *Lekas,* 23 Or App at 603, the parties in the case at bar expressly indicated which age of majority would govern the child support provision in their property settlement agreement. The words "then in effect" reflect the parties' obvious anticipation of a change in the age of majority, which change occurred barely four months after the property settlement agreement was executed. These words further show the parties' intent to follow the prospective age of majority.

■■ Such words would be superfluous if the parties had intended to refer to the age of majority in effect at the time of the agreement. Every word in a sentence, clause or phrase must be given its just effect, in order to arrive at the meaning of the whole. *Ramsay Signs, Inc. v. Dyck,* 215 Or 653, 658, 337 P2d 309 (1959). Thus, the words "then in effect" cannot be disregarded. Taken as a whole, the phrase "legal age under the laws of Oregon then in effect" emphasizes the parties' deliberate intent to refer to the new age of majority— age 18.

■■ The parties elected to follow a different age of majority from that presumed under the "saving clause." Contrary to the thrust of the mother's argument, the mere act of incorporating the property settlement agreement into the decree did not negate the plain intent of the parties. Such a result would contravene the express legislative intent enacted in § 84(2)(c). It is true that as noted in *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943), and *Davis v. Davis,* 19 Or App 209, 527 P2d 149 (1974), Sup Ct *review denied* (1975), once incorporated into a court decree, a property settlement agreement loses its contractual nature. However, assuming that here the court at the time of entry of the decree gave thought to the issue and decided to adopt the parties' language, we assume that it used the phrase "then in effect" advisedly and with intent to give meaning to it.

A property settlement agreement containing sup-

port provisions is not an uncommon prelude to the dissolution of a marriage and such agreements frequently are incorporated in dissolution degrees. To hold that such an incorporation automatically negated the provisions of § 84(2)(c) would be to largely destroy the legislative intent contained in that provision. There is nothing in the relevant language requiring us to hold that what the legislature gave in § 84(2)(c) it took away in § 84(2)(a) and (b). *State v. Irving,* 268 Or 204, 520 P2d 354 (1974).

Affirmed.