Argued and submitted February 25, reversed and remanded for entry of a decree April 13, reconsideration denied May 21, petition for review denied June 16, 1981 (291 Or 118)

WESEMAN,
*Appellant,*
*v.*
WESEMAN,
*Respondent.*

(No. 80-1-408, CA 18199)

626 P2d 942

Robert D. Scholz, Portland, argued the cause for appellant. With him on the brief was Helfrich & MacMillan, P. C., Portland.

Dale E. Liberty, Sr., Oregon City, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

This is a suit in equity to enforce the provisions of a dissolution of marriage decree. The marriage between the parties was dissolved on January 15, 1979. By the terms of the property settlement agreement, which was incorporated into the decree, defendant was awarded the family residence, valued at $85,000, but was required to pay plaintiff his share of the equity, in the amount of $10,000, should she remarry or sell the property.[1] In March of 1979, defendant notified plaintiff of her intent to marry but, in a second letter, repudiated her statement, saying "the money situation is out of sight." Shortly thereafter, the man with whom she was romantically involved moved into the home to live with defendant and her two teenage sons. In April of 1979, defendant and the man living with her participated in a ceremony in which a local minister pronounced a blessing on the couple. The two now share the household costs and own a car jointly.

Plaintiff contends that for purposes of the dissolution decree, defendant has "remarried" and he is entitled to $10,000. The trial court dismissed his complaint, finding that portion of the decree conditioning defendant's payment of $10,000 on her remarriage contrary to public policy and unenforceable. It also found that even if the decree were enforceable, plaintiff was not entitled to $10,000 because defendant had not remarried.

The first question we consider is whether the portion of the decree plaintiff seeks to enforce is enforceable. In *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977), finding a decree which provided for termination of spousal support upon remarriage to be contrary to public policy, the Supreme Court said: "Public policy does not require that a woman whose first marriage has been dissolved be free to remarry only if her new husband is able to support her." 280 Or at 355. In *McCormack and McCormack,* 45 Or App 1111, 610 P2d 290 (1980), we considered a dissolution

---

[1] The parties were married in 1970. There were no children born of the marriage and plaintiff incurred no child support obligation for the teenage children of defendant's former marriage. The agreement divided the parties' personal property, the equity in the new residence and their debts.

decree which gave the wife the family home and the husband a lien payable on one of four events: the wife's remarriage, her moving from the home, the sale of the property or the passage of ten years. In *McCormack* we rephrased *Grove* as follows: "Public policy does not require that a woman whose first marriage has been dissolved be free to remarry only if her new husband is able to [pay off the lien on the house.]" 45 Or App at 1116. In both cases it was emphasized that unless there is a reason, at the time the decree is entered, to predict a remarriage which will substantially affect the financial situation of the supported spouse, it is improper for a court to condition the payment of money automatically on that event.

However, *McCormack* and *Grove* both considered situations in which the trial court had imposed the conditions for payment of the husband's lien on the house and for termination of spousal support. In the case before us, the parties entered into a property settlement agreement before their dissolution which provided "If the property is sold during [wife's] lifetime or if she remarries, she will pay $10,000 to respondent at that time." This agreement was entered into September 29, 1978, and was specifically amended to include the "if she remarries" language. In *Grove* the Supreme Court noted that while it is against public policy for a court to decree that remarriage requires automatic termination of spousal support, it added, at n. 12a, p. 356: "This holding, of course, does not apply to a case in which there is either a valid property settlement contract or a valid prenuptial contract which provides for automatic termination of spousal support upon remarriage of the supported spouse * * *."

■■ We interpret this to mean that where the parties voluntarily enter into an agreement containing such a condition the contract is not, because of the condition, violative of public policy (even though the contract may be unenforceable for other reasons, such as fraud). The parties to this case do not challenge the legality of the contract on any basis other than public policy. We believe the public policy question is disposed of by the footnote cited from *Grove.* Here the court did not impose the condition; the condition was voluntarily agreed to by the parties. The

property settlement provision requiring payment to plaintiff of $10,000 upon defendant's remarriage is therefore enforceable.

■ ■    The next question is whether defendant's cohabitation with a man sufficiently fulfills the intentions of the property settlement agreement. It is obvious defendant is not "married" in the legal sense, ORS 106.010 - ORS 106.990; however, we find defendant's "blessed cohabitation" to be merely an artifice to defeat the provisions of the property settlement agreement. Defendant's two letters to plaintiff make this clear. Whatever the intention of the parties may have been in making the "remarriage" amendment to the property settlement agreement, the defendant's letters to plaintiff show that her intent in March of 1979 was to marry the man with whom she is now living. She thus enjoys, to a substantial degree, the benefits of a legal marriage, while attempting to avoid her $10,000 legal liability in such a situation. A court of equity should look through the form of a transaction to its substance and enforce the contract sought to be avoided. *Diamond Fruit Growers v. Goe Co.,* 242 Or 397, 400, 409 P2d 909 (1966); *Proebstel v. Trout,* 60 Or 145, 118 Pac. 551 (1911). We do so here.

The facts of this case amply demonstrate, from a practical standpoint, why a dissolution decree should not condition payment of a lien on remarriage. A former spouse may well choose, for his or her next living arrangement, a situation which resembles marriage but does not conform to the legal requirements of ORS 106.150. To allow this defendant and her new domestic associate (*see Smith v. Smith,* 290 Or 675, ____, 626 P2d 342 (1981)), by subterfuge, to enjoy the benefits of the former family home while evading the intended financial consequences, is grossly inequitable. We therefore hold that the provision of the property settlement agreement incorporated in the dissolution decree requiring payment of $10,000 from the defendant to plaintiff upon her remarriage is enforceable, and that defendant is now required to pay plaintiff, her former husband, the sum of $10,000. The judgment of the trial court is reversed.

Reversed and remanded for an entry of a decree.