Argued and submitted June 3, reversed September 9, 1981

# WATERMAN et al,
*Petitioners,*
*v.*
# ARMSTRONG,
*Respondent.*

## (CA 18224, SC 27691)

633 P2d 774

Robert L. Engle, of Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn, argued the cause and filed briefs for petitioners.

Richard L. King, of Mercer, MacLaren, Talney, King & Crew, Portland, argued the cause and filed briefs for respondent.

CAMPBELL, J.

## CAMPBELL, J.

One of the plaintiffs, Sumiko M. Waterman, is the former wife of the defendant, Robert G. Armstrong. Their marriage was dissolved by court decree in September, 1975. The other plaintiff, Max O. Armstrong, is the son of Sumiko M. Waterman and Robert G. Armstrong. At the time of the dissolution Max O. Armstrong was 14 years of age and was suffering from a terminal illness.

In September, 1979, when the son was 18 years of age, the mother and son filed their amended complaint in this case against the father seeking specific performance of the following paragraph of a property settlement agreement:

"7. [Father] further agrees to pay any additional medical expenses over and above that paid by his accident and health insurance for treatment of Max Oka Armstrong, it being understood that [father] has 80. coverage and that [father] will pay the additional 20. and hold [mother] harmless therefrom."

The mother also sought a judgment in the amount of $2,509.71 for the son's medical expenses which had been paid by her. The son claims to be a third party beneficiary under the property settlement agreement. The decree of dissolution "approved and ratified" the property settlement agreement and recited "the terms thereof are hereby incorporated herein as a part hereof."

Did the above quoted paragraph of the property settlement agreement merge into the decree as a support provision? That is the basic issue framed by the parties in this case. The parties agree that if it is a support provision which merges into the decree, then the father's obligation to pay the son's medical expenses terminated when the son reached the age of 18 years.[1] ORS 107.105(1). *Jackman v. Short,* 165 Or 626, 109 P2d 860 (1941); *Mack v. Mack,* 91 Or 514, 179 P 557 (1919). *See also Langnese and Langnese,* 13 Or App 88, 508 P2d 831 (1973). The mother and son contend that if the above quoted paragraph 7 did not merge into the

---

[1] The son, Max Oka Armstrong, did not attend school after his 18th birthday and therefore no claim was made that he was entitled to support under ORS 107.108.

decree as a support provision, then it can be enforced as an independent covenant separate and apart from the dissolution decree. *Finlay-Wheeler v. Rofinot,* 276 Or 865, 556 P2d 952 (1976); *Carothers v. Carothers,* 260 Or 99, 488 P2d 1185 (1971).

The trial court held that the paragraph in question merged into the dissolution decree as a provision for support and that it did not "have jurisdiction of the matter."[2] The mother's and son's amended complaint was dismissed. They appealed to the Court of Appeals, which affirmed without opinion. We accepted review. We reverse.

The mother contends that the property settlement agreement was negotiated and executed upon the understanding that the father would pay the son's medical expenses for the son's lifetime. It is the father's position that under the agreement his obligation to pay the medical expenses terminated when the son reached the age of 18 years.

Evidently the trial court and the parties agreed that the above quoted paragraph 7 of the property settlement agreement was ambiguous, because the evidence introduced at the trial without material objection not only shows the circumstances under which the agreement was made but also explains each party's position as to the length of time the father was obligated to pay the son's medical expenses. ORS 42.220 and 41.740.

■ We agree that the paragraph in question is ambiguous. We did not limit our review in this case to questions of law, and the questions of fact were argued in detail before this court; therefore we try the matter *de novo.* ORS 19.125(4).

The mother and father were married in Tokyo, Japan, in June, 1959, while the father was in the Navy. They came to the United States in October, 1959. The son, Max Oka Armstrong, who is a party plaintiff here, is the oldest son; he was born in September, 1960. There are two younger sons who were born in 1962 and 1964.

---

[2] The trial court evidently concluded that, because it was a court of general jurisdiction and not a domestic relations court, it did not have jurisdiction. Marion County has a separate domestic relations department. ORS 3.160.

The mother graduated from high school in Japan. She studied English in a school in Japan for about three months and then took a short course in the same subject when she arrived in this country. It is apparent from the transcript of the testimony that she has some difficulty with the English language. The mother did not work outside of the home on a steady basis during the marriage. She did have some short-term employment as a motel maid, a waitress, and a cannery worker. The record is silent as to the background of the father.

The mother testified at the trial that the son, Max Oka Armstrong, was suffering from "lupus" and that it was a blood disease. The mother found out about the disease when the son was 12 or 13 years of age, and it was the mother's understanding that the son's life expectancy was from one to ten years as of the time of the diagnosis.[3]

In May, 1975, the mother and father employed an attorney[4] to file a co-petition for dissolution of marriage and to prepare a property settlement agreement. The mother argues that the attorney was the husband's attorney. The record does not support this argument. Although the husband first contacted the attorney, who had been previously recommended by the husband's employer, there is no no direct evidence that he represented the husband exclusively. However, it is clear that the wife did not have independent legal advice.

The mother and father met in the attorney's office on two separate occasions in connection with the preparation and execution of the property settlement agreement. The mother testified as follows:

"Q. Now I am talking about when you were in [the attorney's] office, when you were talking about this. Did

---

[3] On trial the mother was asked to give her understanding of the name of the disease. She merely replied: "Lupus, blood disease." In her brief in the Court of Appeals, the mother expanded as follows: "[Max Oka Armstrong] requires regular medical treatment at substantial expense and his condition of systemic lupus erythematosus, a blood disease, is still incurable and still considered terminal." This statement in the mother's brief was not contested in the father's brief in the Court of Appeals or in argument in this court.

[4] The attorney who prepared the co-petition and the property settlement agreement did not represent any party on trial or on appeal.

you know then whether or not the insurance company paid all of the medical bills, did you know?

"A. No.

"Q. You just knew there was insurance?

"A. (Witness nods head in the affirmative.)

"* * * * *.

"Q. Were you in a position to pay that yourself?

"A. No. He [father] told me, he said he going to pay, so whenever after the insurance take care of the bills, then whatever balance he going to pay it off, keep paying to take care of it.

"Q. You said somebody asked you if that was all right, if that was agreeable. Who asked you that?

"A. Mr. Armstrong.

"Q. He said I will pay your medical bills, is that okay, and what did you say?

"A. No. He told me he would take care of Max's medical bills as long as he lived so he asked me that fair enough and I told him yes.

"Q. What did [the attorney] say to you about that provision?

"A. He asked me okay, and I said yes.[5]

"* * * * *.

"Q. You understood he [father] would pay those [medical expenses] for the rest of Max's life?

"A. Yes.

"* * * * *.

"Q. Would you have signed it if that's what it would have said, that [father] only pays until Max reaches eighteen?

"A. No, I wouldn't sign.

"Q. Why not?

"A. Because I couldn't afford to pay the doctor bill for Max. Even I working, I couldn't pay."

---

[5] The father in his brief in the Court of Appeals and on argument before this court stressed the following part of the mother's testimony on cross-examination:

"Q * * * at the time you executed, signed the agreement, is it your testimony that [the attorney] told you that that would cover Max for the rest of his life?

"A. I don't think so, I don't remember."

From reading the mother's testimony one gets the impression that she places a strict literal interpretation upon the English language. By her answer on cross-examination, she could have meant that while she had the pen in her hand signing the property settlement agreement the attorney did not make a statement to her.

At the trial the father acknowledged that at the time he signed the property settlement agreement he knew that the son had the blood disease and that the son's life expectancy had been reduced. Through his employment the father had a health and accident policy which provided 80% coverage for his children.[6] The father testified that he understood that his obligation to pay the medical expenses would terminate when the son reached his 18th birthday and that there were no discussions about payment beyond that time. On cross examination the father contended that the son's medical expenses after age 18 should be paid by the Social Security Administration. This appears to be an afterthought because he admitted that he did not know about that possibility in 1975 when the property settlement agreement was executed.

The attorney who prepared the property settlement agreement testified that "Mrs. Waterman knew exactly what she was getting." The balance of his testimony does not support this conclusion. He had no independent recollection of the meetings or conversations with the mother and father and was testifying strictly from the notes that he had made at those previous times. The notes are not in evidence, but apparently from references made to them during the testimony they did not completely coincide with the above quoted provisions of paragraph 7.

The property settlement agreement contained a general support provision as to all three sons:

"8. [Father] agrees to pay to [mother] the sum of $66.66 per month per child for each of the three minor children of the parties hereto, to-wit: MAX OKA ARMSTRONG, KENT LEE ARMSTRONG, and WAYNE REX ARMSTRONG, for their support, nurture and maintenance, and that *said payments shall continue until such time as each of said minor children shall attain the age of eighteen (18) years* or are emancipated, whichever occurs first; it is further agreed that said monthly payments shall be paid through the County Clerk of Marion County, Oregon." (Emphasis added).

---

[6] On trial the father testified that the health and accident coverage was still available to the son, Max Oka Armstrong, even though the son was 19 years of age at that time.

The mother argues that because paragraph 8 provides that the monthly child support payments shall cease when the minor children reach the age of 18, then it follows that the medical expenses for Max Oka Armstrong under paragraph 7 are to be paid for his lifetime. The mother reaches this conclusion because there is no age limit in paragraph 7.

■ To construe paragraph 7 of the property settlement agreement and determine the intent of the parties, this court must take into consideration the circumstances under which it was made, the testimony of the draftsman and the parties, and the entire instrument. ORS 42.220 and 41.740. *Brown, Adm'r v. Miles,* 193 Or 466, 238 P2d 761 (1951).

■ We have taken into consideration all the facts and circumstances, but we think the fact that the father had available to him through his employment health and accident insurance and the fact that the mother had no financial means to pay medical expenses were controlling as to the intent of the parties. The most logical inference to be drawn is that it was the intent of the parties to the property settlement agreement that the father be required to pay all of the the son's medical expenses for the son for the son's lifetime with the primary source of payment to be a health and accident policy to be provided by the father to the son. If the father did not or was unable to provide full insurance coverage for the son, then it follows that he was required to personally pay the balance of the son's medical expenses. The reference in the agreement to 80. coverage is merely a recital that on that date the father had that amount of coverage.

■ The next step is to determine if paragraph 7 of the property settlement agreement, as construed by this court, merged into the dissolution decree. This is a question of law. *Rigdon v. Rigdon,* 219 Or 271, 276, 347 P2d 43 (1959).

> "Where a plaintiff obtains an equitable decree against the defendant by which the defendant is directed to do an act other than to pay money, the plaintiff's claim is not merged in the decree." Restatement of Judgments, § 46, comment a at 178 (1942).

We hold that the requirements of the property settlement agreement that the father pay all the son's

medical expenses and provide health and accident insurance coverage to the son for the son's lifetime are acts other than the payment of money and therefore did not merge into the dissolution decree.[7] This is consistent with our previous cases, *Finlay-Wheeler v. Rofinot, supra,* and *Carothers v. Carothers, supra,* and with *Burke v. Burke* 32 Del Ch 320, 86 A2d 51 (1952).

The *Burke* case was suit for the specific performance of a separation agreement. In part the agreement provided: "that (father) shall pay all unusual medical and dental expenses of the (mother) and all medical and dental bills of the minor child as long as he is not self-supporting * * *." The Delaware Court found

> "* * * the law to be that in the case of a separation agreement providing for more than the payment of money the courts will not declare that the agreement merged with the subsequent decree or judgment of divorce. *McQuillen et al v. Dillon, et al,* 2 Cir., 98 F2d 726; *Barber v. International Co. of Mexico,* 74 Conn. 652; 51 A. 857; Restatement of the Law, Judgments, Sec. 47 (h); 30 Am. Jur. Judgments Sec. 155, p 905; 50 C.J.S. Judgments § 868, p. 442." (86 A. 2d at 53)

The *Carothers* case was an action for the breach of a divorce property settlement agreement between the plaintiff and the defendant's decedent. The agreement was approved and made a part of the divorce decree, which provided that the decedent would "carry and maintain $20,000 insurance on his life." The plaintiff was named as beneficiary for the parties' minor child. This court affirmed a judgment for the plaintiff and held:

> "Where, as in this case, a divorce decree approves provisions of a property settlement agreement under which the husband is required to maintain a stated amount of life insurance for the benefit of his former wife or his children, such a decree is not considered as one for payment of money, but as one requiring the performance of a future act, with the result that the doctrine of 'merger' has no application. *Desjardins v. Desjardins,* 308 F2d 111,

---

[7] The requirement to pay a future medical expense is considered to be the performance of a future act and not a present obligation for the payment of money. All of the examples of "for the payment of money" set out in the *Restatement of Judgments* are definite liquidated sums which could be docketed as judgments.

117-18 (6th Cir 1962); *Buswell v. Buswell,* 377 Pa 487, 105 A2d 608, 612 (1954); and *Burke v. Burke,* 32 Del Ch 320, 86 A2d 51, 53 (1952)." 260 Or at 102.

The *Finlay-Wheeler* case was also an action for the breach of a divorce property settlement agreement where the defendant's decedent had failed to maintain an insurance policy on his life for the benefit of a minor child. This court, at page 868, said:

"In dealing with a similar provision in a property settlement agreement which required a husband to carry life insurance for the benefit of his minor child for an unspecified purpose and for an unspecified time, this court in *Carothers v. Carothers,* 260 Or 99, 488 P2d 1185 (1971), held that the provision was one requiring the performance of a future act with the result that the doctrine of merger had no application. In other words the obligation to carry life insurance did not become part of the decree. So in this case whatever rights the parties have arise out of the property settlement itself and not out of the decree that approved it."

In *Buswell v. Buswell,* 377 Pa 487, 105 A2d 608 (1954), a divorced wife brought a suit in Pennsylvania against her ex-husband for the enforcement of an oral agreement entered into in contemplation of divorce and incorporated into the Illinois decree. The husband admitted the oral agreement but claimed that it had merged into the decree. The agreement provided in part that the husband pay the reasonably necessary medical expenses for the children, maintain an unencumbered $8,500 insurance policy on his life, and buy "$25 United States War Bonds" for the children on a regular basis. The court affirmed a decree for the plaintiff, and at page 612 explained:

"The defendant maintains in this respect that the original oral agreement between him and his wife merged into the court decree and it, therefore, has no legal existence separate and apart from the decree. This argument cannot prevail over the common rule that: 'A judgment or decree which orders the doing of an act other than the payment of money does not merge the right for the enforcement of which the action was brought.' * * * "

A judgment shall be entered in favor of the mother and against the father in the sum of $2,509.71 for medical expenses paid by the mother for the benefit of the son. The

dates of the payments by the mother have not been segregated, therefore the judgment will bear interest at the legal rate from June 5, 1980, the date of the trial in the circuit court.

■ The mother and son have asked us to specifically enforce paragraph 7 of the property settlement agreement. We find that the son is a third party beneficiary. We cannot specifically enforce the payment of future medical expenses which may never be incurred but the father is ordered to obtain or provide a health and accident insurance policy or coverage for the benefit of the son for the son's lifetime. If the father is unable to obtain or provide full or partial coverage for the son, then the father shall personally pay the son's necessary medical expenses and save and render the mother and son harmless therefrom.

We do not reach the other questions raised by the mother and son.

Reversed.