Argued and submitted May 5, reversed and remanded November 2, 1982

In the Matter of the Marriage of

McDONNAL,
*Petitioner on review,*
*and*
McDONNAL,
*Respondent on review.*

(CA 18841, SC 28363)

652 P2d 1247

James W. McClurg, Portland, argued the cause for petitioner on review. With him on the brief was Kennedy, King & McClurg, Portland.

Ira L. Gottlieb, Portland, argued the cause for respondent on review. On the brief were Chris P. Ledwidge and Ledwidge and Ledwidge, Portland.

ROBERTS, J.

Tanzer, J. dissented and filed an opinion.

Campbell, J. dissented and filed an opinion.

## ROBERTS, J.

In this dissolution of marriage case, wife seeks review of a Court of Appeals decision finding that there was no change of circumstances warranting an extension of spousal support. We allowed review to examine the effect to be given property settlement agreements between the parties which have been incorporated into dissolution decrees and which provide for future review of spousal support by the court.

We take the facts from the Court of Appeals opinion.

"* * * The parties were married in 1959. Two children were born of the marriage. Husband has been steadily employed as a data processor. In 1972, wife was diagnosed as having multiple sclerosis.

"In her petition for dissolution filed in May, 1976, wife alleged in part:

" 'Petitioner is suffering from multiple sclerosis and is under the care and treatment of doctors. * * *'

"She asked for custody of the children, child support and $600 monthly spousal support, in addition to an equitable distribution of the marital estate. In June 1976, wife's neurologist advised wife's attorney that he could not anticipate her being gainfully employed. In his response, husband specifically acknowledged wife's disease. He asked that she be awarded 'a reasonable amount of support for a reasonable period of time * * *.' He also asked for custody and a fair and equitable distribution of the marital estate. In October 1976, the trial court awarded temporary custody of the children to husband. Wife was not ordered to contribute to their support. The order also provided that husband pay wife $500 monthly for temporary support.

"Wife was 'pretty ill' at the time of the dissolution in February, 1977. She had difficulty walking, and she did not anticipate ever being employed. Wife's neurologist advised her attorney that at that time she was unemployable. The decree awarded permanent custody of the children to husband. Wife was not ordered to contribute toward their support. The family residence was ordered sold, and the net proceeds were divided between the parties. From that sale wife received $20,543, which she invested in savings certificates. The decree provided for spousal support of

$500 a month for one year and $400 a month the following two years. The decree further provided:

" 'The matter of alimony may be reviewed by the court at the expiration of three years, that is after February 25, 1980, upon motion filed prior to the expiration of three years, that is prior to February 25, 1980.'

"Wife did not appeal the provision of the decree awarding her temporary support.

"On December 3, 1979, wife's neurologist advised her attorney that her medical condition remained essentially unchanged. In January, 1980, wife filed her motion to continue and increase spousal support. In her affidavit, wife alleged that there had been 'changes in [her] personal requirements' and 'changes regarding the minor children of the parties.' She alleged that husband's financial condition had improved while hers had deteriorated, and that her illness and disease had worsened. She summarized her claimed change of circumstances as follows:

" 'One, the discontinuance in necessity to provide support for the daughter by [husband]. Secondly, the deteriorating increase of the disease afflicting [wife]. Third, [wife's] increased living expenses corresponding to her physical decline. Lastly, the increased financial potential of the [husband] due to the sale of the residence and such other matters yet to be determined by [wife].'

"At the modification hearing, the evidence showed (1) the parties' daughter left husband's home in March, 1977, and was married in December, 1977, (2) wife's medical condition had remained essentially unchanged, (3) wife's expenses had decreased from $598 monthly in 1977 to $550 monthly in 1980, (4) wife's proceeds from the sale of the parties' home has decreased to $13,391 due to her expenses and the capital gains tax, and (5) husband's gross income had increased from $28,630 in 1977 to $31,344 in 1979. The evidence also showed that husband had married a woman with two children, an income of $21,120 yearly, $100 monthly child support and a $65,000 condominium, which she rented for $400 monthly, an amount about equal to her payments and expenses on the unit. Husband testified he had used his share of the proceeds from the sale of the parties' home to make a down payment on a new home which he purchased for $50,500. He sold that house for $75,000 when he remarried and purchased the house he and his present wife are now living in for $102,000. He estimated the present value of that house to be $125,000.

By reinvesting the proceeds from the sale of the parties' home in another residence, he avoided paying any capital gains tax on that sale.

"The trial court stated:

" 'Quite frankly, it is a close case. * * * When you read these reports, not all that much has changed, and even the petitioner's testimony is not all that strong.

" '* * * [T]he rule is a preponderance of the evidence, which is ever so slight and outweighing to that opposed to it. I would find by a preponderance of the evidence that there has been a change of circumstances produced by the evidence both in the form of written exhibits, as well as the testimony of the petitioner, and therefore, I am going to continue spousal support, and it will be on a permanent basis, rather than for a limited period of time. On that question, I don't think there is any doubt but that her condition is going to be of a permanent nature.'

"The trial court based its conclusion that there had been a change of circumstances on the court's finding of a change in wife's physical condition. The trial court thereupon modified the decree and ordered husband to pay spousal support of $500 monthly on a permanent basis." 54 Or App 296, 298-301, 634 P2d 1357. (Footnotes omitted.)

The Court of Appeals reversed the trial court, stating "the trial court correctly concluded that the reviewability language in the decree was surplusage," 54 Or App at 301, and finding that wife had

"failed to sustain her burden of showing that there has been a substantial and unanticipated change in the circumstances of the parties since the entry of the decree in 1977." 54 Or App at 302-03.

We agree that there was not sufficient evidence of a substantial change of circumstance. The question, therefore, is whether a trial court may modify a decree of dissolution so as to give effect to an agreement of the parties, incorporated into the decree, that an award of spousal support for a fixed period of time may be reviewed without the requirement of a showing of changed circumstances. This requires consideration of the general enforceability of private agreements between parties to a dissolution and the application of the "changed circumstances" rule to modification of such agreements.

The Court of Appeals opinion fails to recognize a significant provision in the decree. The decree specifically states "that the oral settlement agreement of the parties should be approved and the same is hereby approved and made a part of this decree." It is that language coupled with the language "[T]he matter of alimony may be reviewed by the court at the expiration of three years * * *" that is the pivotal point of this case.

ORS 107.105(1)(c) provides:

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"(c) For the support of a party, in gross or in instalments, or both, such amount of money for such period of time as it may be just and equitable for the other party to contribute. The court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party. If requested by either party, the court shall make and set forth in its decree the findings of fact upon which its award or denial of support was based. In making such support order, the court shall consider the following matters:

"(A) The duration of the marriage;

"(B) The ages of the parties;

"(C) Their health and conditions;

"(D) Their work experience and earning capacities;

"(E) Their financial conditions, resources and property rights;

"(F) The provisions of the decree relating to custody of the minor children of the parties;

"(G) The ages, health and dependency conditions of the children of the parties, or either of them;

"(H) The need for maintenance, retraining or education to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; and

"(I) Such other matters as the court shall deem relevant."

This statute provides two separate methods for establishing the amount and duration of spousal support.

The parties may enter into a property settlement agreement providing for spousal support which the court *may* approve and ratify by incorporating it into the decree, or the court may itself determine the appropriate amount and duration of spousal support based on the evidence presented. In the second case, the court *shall* apply the factors set out in the statute. A court is not required to accept an agreement between the parties, *Unander v. Unander,* 265 Or 102, 107, 506 P2d 719 (1973); *Frey and Frey,* 23 Or App 25, 541 P2d 145 (1975). It may, upon consideration, reject an agreement as unfair to one or the other of the parties. *Bach and Bach,* 27 Or App 411, 555 P2d 1264 (1976).[1] However, agreements made in anticipation of a dissolution are generally enforceable and accepted by the court when they are equitable given the circumstances of the case. *Jensen v. Jensen,* 249 Or 423, 438 P2d 1013 (1968); *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943); *Taylor v. Taylor,* 154 Or 442, 60 P2d 942 (1936). We do not read the statute to require the court to apply an analysis of the statutory factors to the circumstances of each case when confronted with a proposed agreement.

There are very good reasons to allow courts to accept agreements at face value without the requirement that evidence be taken in an attempt to "match-up" the agreement provisions with the statutory factors. First, the enactment of the so-called "no fault" divorce law in 1971 addressed in part a legislative concern with the growing number of divorce cases and the excessive use of court time in litigating cases under the then existing fault provisions. It was thought that if fault were not in issue much litigation could be avoided. In addition, the desirability of removing divorce proceedings from the adversarial process was often expressed. It was anticipated that a non-adversarial, "no fault" procedure would encourage parties to settle their disputes as amicably as possible. Hearings on House Bill 1239 before the House Judiciary Committee, February 17, 1971 and Senate Judiciary Committee, April 5, 1971. These two objectives, decreased litigation and dispute resolution

---

[1] In *Bach,* the court modified a property settlement agreement entered into by the parties before incorporating it into the decree. The court adjusted the property division in husband's favor because he suffered from multiple sclerosis and would be unable to maintain employment.

through agreement at the initiation of the divorcing parties, are most effectively advanced when proposed property and support agreements are accepted by the court and incorporated into the dissolution decree without a requirement for the presentation of evidence.

■ Once approved by the court and incorporated into the decree, agreements entered into by the parties are to be enforced as a matter of public policy.

> "It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreements unfair or illegal, that they will not be enforced. *Eldridge v. Johnson,* 195 Or 379, 245 P2d 239, 251. * * *." *Feves v. Feves,* 198 Or 151, 159-160, 254 P2d 694 (1953).

Additional considerations bear upon our affirmance of a policy of enforceability of agreements between divorcing parties. In cases where a support agreement has been incorporated into the decree in lieu of an evidentiary hearing and factual determination by the court the agreement itself is the court's only measure of the equities between the parties. The parties' own resolution of their dispute should be accorded great weight. In all cases of dissolution the court exercises full equity powers. ORS 107.405. Where parties have foregone their opportunity to litigate disputes and have chosen instead to enter into an agreement their reliance on the agreement can be presumed. Inequity may result if this court adopts a policy of less than full enforcement of mutually agreed upon property and support agreements.

We do not suggest that a property settlement providing for spousal support may go so far as to preclude the court's statutory power to modify support even where changed circumstances exist. *Prime v. Prime, supra,* would disallow enforcement of such a provision. However, short of conflict with the statutory powers of the court we recognize the court's responsibility to discover and give effect to the intent of the parties as reflected in the incorporated settlement agreement.

In *Prudential Insurance Company v. Weatherford,* 49 Or App 835, 621 P2d 83 (1980), an ambiguity existed as to the intent of the parties in providing for life insurance benefits in the property settlement incorporated into the decree. It was acknowledged that "in construing the effect of property settlement agreements, as with any contract, the inquiry is directed to the ascertainment of the intent of the parties." 49 Or App at 839. In *Waterman v. Armstrong,* 291 Or 551, 633 P2d 774 (1981), this court construed a disputed paragraph in an incorporated property settlement agreement providing for payment of medical benefits for one of the children. A determination of the intent of the parties was reached by consideration of "the circumstances under which [the agreement] was made, the testimony of the draftsman and the parties, and the entire instrument." 291 Or at 558.

■ The preceding cases demonstrate that provisions of a property settlement agreement are interpreted by courts like any other contract. Questions relating to the construction, operation, and effect of property settlement agreements between a husband and wife are governed, in general, by the rules and provisions applicable in other contract cases. As in all contract disputes, resolution depends upon the intent of the parties as evidenced by the language of the document, or, where ambiguity exists, by extrinsic evidence. ORS 41.740.

■ The language of the decree we are concerned with here provided that wife was to receive spousal support for only three years with the added provision that the court would review the support at the end of that time, and it provided that husband would be obligated to pay support for only three years with the court reviewing that obligation at the end of the period. Neither party appealed. Wife did not appeal the three year limitation and husband did not appeal the retention of jurisdiction by the court to review the support. Husband informs us that the dispute as to support duration was only finally resolved on the day of trial. It seems evident that wife would not have accepted support for only three years without the reviewability provision; similarly, it seems likely that husband was willing to accept the reviewability provision in return for his obligation to pay support for only a limited time.

Husband contends that the reviewability provision of the decree merely states the language of ORS 107.135 providing for modification. He relies on *Warrington v. Warrington,* 160 Or 77, 80, 83 P2d 479 (1938) and *Prime v. Prime, supra,* for the proposition that any agreement of the parties regarding support was made in view of the court's statutory power of modification. In both cited cases plaintiffs sought to preclude *any* modification and it was held the court's power to modify support awards outweighs any agreement entered into between the parties, whether or not such agreement was incorporated into the decree. However, the dispute in the case before us does not center on the enforceability of a preclusion of the court's power to modify but addresses rather the enforceability of a provision in the parties' agreement providing modification to support without a showing of a change of circumstances.

Wife's affidavit in support of the modification motion states that

"in accordance with the wishes of the Court in the original Decree of Dissolution, the Court should review the wife's circumstances and continue her support and because of a significant change of circumstances such support should be increased."

This language indicates that it was wife's understanding of the decree that no change of circumstances was required for the court to review the support and continue it at the amount set in the decree. In her memorandum in support of her petition for review, wife presents the two issues of continuation and increase as distinct. She contends that after three years the alimony provisions of the decree were to be reviewed to determine if wife's physical condition were such that support should be continued; but in order for support to be increased above the level already established, it was incumbent upon wife to show a substantial change of circumstances. *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977). The parties thus are in disagreement as to the effect of the language in the decree.

The factual question is whether the parties, by inserting this provision into the decree, meant merely to state the jurisdiction of the court as it already exists by

statute, or whether they meant to provide an authority not already existing but within the court's powers. As was stated in *Bakke v. Bakke,* 30 Or App 345, 349, 567 P2d 126 (1977), "assuming that here the court at the time of entry of the decree gave thought to the issue and decided to adopt the parties' language, we assume that it used the phrase * * * advisedly and with intent to give meaning to it." In the present case, it was not necessary to state the court's authority to modify the alimony award at any time, since this authority is statutory. In the absence of any language in the decree relating to review of the support provisions it would be proper to apply ORS 107.135 and the changed circumstances rule to any modification and to assume that if the parties considered the potential for modification this is what they intended. However, in light of the specific review provision, we are not convinced that this is what the parties or the court intended in this case.

■ Though we do not have the dissolution court record before us, we believe the language of the decree is ambiguous. At the modification hearing the judge remarked,

> "It's kind of surprising to me that the parties would agree that the burden would be upon the handicapped person to continue [spousal support] rather than the unhandicapped person to terminate it."

It is, in fact, so surprising that we are reluctant to read the decree in that manner. We conclude that the agreement to pay spousal support for three years could have been dependent upon the provision that the court could review the support award at the end of that time. If that is the case, it is necessary for us to consider whether under those circumstances the court's decision at the time of the modification hearing was subject to the changed circumstances rule.

ORS 107.135(1)(a) provides:

> "(1) The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by law for service of a summons, to:

> "(a) Set aside, alter or modify so much of the decree as may provide for * * * the support of a party * * *."

This statute, while granting the court the power to set aside, alter or modify the support provisions of a decree at any time after dissolution, does not specifically require a showing of changed circumstances. It is a rule of case law, not statutory law, that the party seeking the modification bears the burden of showing a substantial change in circumstances since the original decree. *Prime v. Prime, supra; Grove and Grove, supra.* The rule has become so well established that this court said almost thirty years ago that it had "become hornbook law in this state." *Feves v. Feves, supra,* 198 Or at 159. The purpose of this rule has been said to be the avoidance of relitigation of matters settled by the final decree. H. Clark, *Law of Domestic Relations* 456 (1968). However, the Court of Appeals has noted that the changed circumstances rule

> "is neither statutory nor jurisdictional. It is a judge-made rule and as such we are free to fashion exceptions or to relax its requirements in appropriate situations. *See Deffenbaugh and Deffenbaugh,* 286 Or 759, 596 P2d 966 (1979); *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960)." *Eusterman and Eusterman,* 41 Or App 717, 727, 598 P2d 1274 (1979).

*Deffenbaugh* is a case in which the trial court, entering a dissolution decree, desired to keep the issue of custody open for several months to determine whether the mother would go through with her plans for remarriage. The decree granted temporary custody of the children to the husband, the court intending to award permanent custody to the mother if she remarried by a specified date. If that event were to occur, the court said, wife would not have to show any other change of circumstances to obtain permanent custody. 286 Or at 763. At a subsequent hearing on wife's motion to modify the decree, the court awarded her the children. Husband objected that the court had erred in failing to hold a hearing to determine if there had been a substantial change of circumstances after the initial temporary custody award which justified a change of custody. 286 Or at 764. This court said, "If an award is permanent, the change of circumstances rule applies when someone seeks a change of custody. If an award is temporary, and validly so, the rule does not apply." 286 Or at 765. We refused to recognize as permanent an award of custody "that was

intended by the trial court to be temporary." 286 Or at 770-71, 773. Since the trial court had never decided the issue of permanent custody, we said it would be unfair for it to do so in the first instance with the wife "laboring under the disability of having to show a change of circumstances since the trial of the case," 286 Or at 774, and removed the requirement of such a showing on remand.

In *Perley* we held that where the trial court had properly provided in its decree that permission might be granted to wife to move to another state and take children with her after due notice to husband, it was not necessary to show a change of circumstances as a condition precedent to making an order modifying the decree to authorize such a move. The Court of Appeals in *Eusterman* held that the requirement of proof of changed circumstances is inapplicable to the question of modifying child support so as to extend it to children over the age of 18 who are regularly attending school while the children are still so young as not "yet to be in or on the threshold of college." 41 Or App at 727.

The Court of Appeals, reversing the trial court in this case, relied upon its opinion in *Slauson and Slauson,* 29 Or App 177, 562 P2d 604 (1977) in which it invalidated a provision in a dissolution decree permitting the wife to request a review of alimony at any time without a showing of a substantial change in circumstances, finding such a provision "without legal authority." 29 Or App at 183.[2] *Slauson* cited for this proposition our opinions in *Watson v. Watson,* 213 Or 182, 323 P2d 335 (1958) and *Hurner v. Hurner,* 179 Or 349, 170 P2d 720 (1946). *Watson,* however, was an award of temporary custody of a child to juvenile authorities because the court refused to give permanent custody to either parent. In *Hurner* the court considered an agreement of the parties which purported to settle property

_____

[2] The Court of Appeals, in this case, termed the three years of alimony "temporary support" and noted that wife did not appeal this provision nor petition for permanent support. 54 Or App at 299, note 1, at 298. Wife understandably did not appeal because the three year condition was a term agreed upon by the parties in their own settlement agreement. We disagree that wife did not seek permanent support. Her petition for dissolution of marriage requested husband to pay $600 per month alimony. This is clearly cognizable as a request for permanent support, without being specially pleaded.

distribution and alimony. The court held that alimony was not an integral ·part of the property settlement and was subject to modification on a showing of changed circumstances. Review by this court was not sought in *Slauson,* and in the only Court of Appeals opinion relying on *Slauson* to apply the changed circumstances rule that reasoning was rejected by this court on review. *Deffenbaugh, supra.*

Here we are faced with a situation different from *Slauson.* There was no agreement in *Slauson;* the court on its own initiative provided in the decree that the wife could request a review of the ˙provisions at any time without a necessity of showing a change of circumstances. The Court of Appeals said, "* * * the court should seek a high degree of finality so that the parties can plan their future with some certainty and are not encouraged to repeatedly march to the courthouse." 29 Or App at 183. In the present case, while it is not clear from the record, the reviewability provision of the court's decree appears to have originated with the parties. If it did, this is a significant difference. This court has recognized and the Court of Appeals has applied a dissimilarity in treatment between provisions in property and support settlement agreements which are imposed by the court and those which arise at initiation of the parties. *Grove v. Grove, supra,* note 12a, at 356; *Weseman v. Weseman,* 51 Or App 675, 626 P2d 942 (1981); *Desler v. Desler,* 56 Or App 812, 643 P2d 655 (1982).

Because wife suffers from multiple sclerosis, a disease known for its unpredictability of progression or remission, it may be that the parties agreed to postpone the decision on permanent spousal support until a future time when wife's condition might be more permanently diagnosed. If that is the case it would be unfair, as it was in *Deffenbaugh, supra,* for wife to establish the need for permanent support laboring under the disability of having to show a change in circumstances.

We do not intend this decision to in any way dilute the importance of the change of circumstance rule. We have pointed out that there are significant reasons for courts to accept agreements entered into by parties to a dissolution; we have also pointed out that trial courts are not obligated

to accept agreements and that equity dictates that courts should, in fact, reject agreements that appear unfair. Only under the most extraordinary circumstances which justify departure from the change of circumstance rule should a court enter a decree that incorporates an agreement for future review. A court should never on its own provide for a review in the future. The use of such language cannot be a substitute for the duty of the court to examine at the dissolution proceeding the fairness of any agreement between the parties, either through application of the statutory factors set forth in ORS 107.105(1)(c) or by exercise of its independent judgment in light of the parties' circumstances at that time.

In the trial court wife proceeded on the basis of two claims: One, that the court could extend spousal support without a showing of changed circumstances because of the provisions of the decree, and two, that there had, in fact, been a change of circumstances. The court thought it was precluded from considering the first claim and decided the case on the basis of changed circumstances. Because the trial court has not had an opportunity to address the first claim this case is remanded for that purpose. The inquiry on remand is whether the oral property settlement included the provision for post-decree review by the court. If the provision arose at the initiation of the parties then it should be made effective. The only way the question can be resolved is by a determination of the intent of the parties. The proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the agreement bearing on the intent of the parties. For that reason we remand to the trial court for further proceedings.

Reversed and remanded to the trial court for further proceedings. Costs to neither party.

**TANZER, J.,** dissenting.

I dissent for the reasons stated in the opinion of the Court of Appeals. Additionally, I offer these general comments.

If ever a hard case made bad law, this one has. The court's sympathy for wife's plight leads it to carve a gap into the change-of-circumstances rule, supported neither

by experience nor persuasive reason. Any practitioner or domestic relations judge will recognize as unwise this qualification of a rule which is rooted in experience and is a fundament of domestic relations law in Oregon and elsewhere. I take at face value the concluding avowal that the holding is applicable only in unique situations. So unique, I expect, that *McDonnal and McDonnal* will be cited in future cases only in obligatory footnotes preceded by *"cf"* or *"but see."*

Even in dissent, I wish to emphasize that the majority disfavors reliance on review provisions. For this court to allow parties and trial courts to defer decision of difficult disputes in order to obtain a present settlement agreement is antithetical to the entire notion of adjudication. I take small solace in the majority's holding that it will only apply such a provision in exceptional situations.

A case can be made that wife's health has deteriorated since the decree, contrary to the hopes (rather than reasonable expectation) of the trial judge. Even so, however, her earning capacity, being nil, has not deteriorated. The argument for a change is not persuasive and it affords no basis to modify husband's decreed transitional burden into a lifelong one. It is not necessarily inequitable to require wife to look to other resources for her support. It is surely a wiser course than to tamper with a universally recognized, sound rule of law.

**CAMPBELL, J.,** dissenting.

I dissent. It is my opinion a trial "anew upon the record" as provided by ORS 19.125 would show that there was a substantial change in the wife's circumstances since the entry of the dissolution decree. Therefore I would reverse the Court of Appeals and affirm the trial court without a remand. It is not necessary to reach the questions decided by the majority opinion.