Argued and submitted October 15, 1984, affirmed as modified April 17, 1985

In the Matter of the Marriage of

EDWARDS,
*Appellant - Cross-Respondent,*
*and*

EDWARDS,
*Respondent - Cross-Appellant.*

(77-6988; CA A31151)

698 P2d 542

J. Kenneth Jones, Eugene, argued the cause for appellant - cross-respondent. With him on the briefs were Russell D. Poppe and Speer, Jones & Andersen, Lawyers, P. C., Eugene.

John G. Cox, Eugene, argued the cause for respondent - cross-appellant. With him on the brief was Hutchinson, Anderson, Cox and Teising, P. C., Eugene.

Before Richardson, Presiding Judge, and Buttler and Warden Judges.

WARDEN, J.

### WARDEN, J.

Wife appeals from a judgment that modified a decree of dissolution to eliminate husband's spousal support obligation and to grant husband a judgment against wife for $4,550 for spousal support payments paid from July, 1982, through August, 1983. She assigns as errors: (1) the ruling that her relationship with one Wullschleger constituted cohabitation; (2) the deletion of the spousal support provisions, because enforcement of the anti-cohabitation provision is contrary to public policy; (3) the exclusion of evidence of wife's economic circumstances; (4) the granting of a judgment to husband for $4,550; (5) the sustaining of an objection to cross-examination of husband concerning his understanding of the treatment of his retirement fund in the parties' property settlement agreement; and (6) the denial of claim for attorney fees. Husband cross-appeals, assigning as error the trial court's failure to award him attorney fees. We reverse the $4,550 judgment against wife and otherwise affirm.

The parties were divorced in 1978 after a 26-year marriage. The decree of dissolution incorporated a property settlement agreement, which in relevant part provided:

"1. *ALIMONY.* Husband shall pay to wife as a contribution to her support and as permanent alimony the sum of $325.00 per month commencing on the 5th day of the calendar month next following the entry of the domestic relations decree and continuing on the 5th day of each succeeding calendar month thereafter. Alimony will terminate only in the event of Husband's or Wife's death, or Wife's remarriage or *cohabitation with a member of the opposite sex.*" (Emphasis supplied.)

On June 16, 1983, husband moved to modify the decree to terminate his spousal support obligation on the ground that wife was cohabiting with a member of the opposite sex. He alleged that wife had been cohabiting since July, 1982, and sought judgment against wife for spousal support paid to her from that time. Additionally, husband sought payment of his attorney fees. In response, wife moved to modify the decree to increase spousal support and to eliminate certain provisions of the decree providing for reduction of spousal support in the event her income increased and the provision providing for termination of spousal support in

the event of her remarriage or cohabitation with a member of the opposite sex. Wife also requested attorney fees.

At the hearing on October 26, 1983, husband testified that he moved to modify the decree after discovering, in March, 1983, that Wullschleger was living at wife's residence and that wife and Wullschleger planned to marry. Wife testified that Wullschleger and his teen-age son had moved into her two-bedroom house in July, 1982. She asserted that her relationship with Wullschleger had been that of landlord and tenant, although she admitted that she and Wullschleger had shared a bedroom and had had sexual relations and that, in early 1983, they had made plans to marry. She testified that she and Wullschleger had had a financial arrangement in which he paid a monthly sum for "rent" and contributed a variable amount for utilities; both she and Wullschleger had purchased groceries, but Wullschleger had purchased more than she, because he was providing for both himself and his son. Wife testified that she and Wullschleger had had no joint accounts and had made no joint purchases; there also was evidence that they had had no intent to comingle assets, even in the event of their marriage. She testified that the wedding plans had been cancelled and that Wullschleger and his son had moved out of her house about July 1, 1983.

The trial court found that the relationship of wife and Wullschleger was one of cohabitation as of July, 1982. The trial court concluded that wife's cohabitation operated to terminate husband's spousal support obligation and entered judgment modifying the decree to delete the spousal support provisions and to award husband judgment against wife for $4,550, a sum equal to the spousal support paid from July, 1982, through August, 1983. Although both parties sought attorney fees, the court ordered that neither party recover them.

We begin with consideration of wife's second assignment of error, which presents the question whether the provision under which husband seeks termination of his spousal support obligation is enforceable. Wife argues that conditioning termination of spousal support on the supported spouse's cohabitation, without evidence that the living arrangement has altered that spouse's financial needs, violates public policy, because the supported spouse has no

economic security in the event her cohabitant dies or abandons the relationship and, in either of those events, she may become a public charge.

■ We agree that a provision for automatic termination of spousal support conditioned on remarriage or cohabitation by the supported spouse, if imposed by the trial court, would be unenforceable. *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769 (1977); *see Bainer and Bainer,* 27 Or App 703, 707, 556 P2d 1377 (1976). However, when the parties voluntarily enter into a property and support agreement, and the agreement is approved by the court and incorporated into the decree, countervailing principles of public policy prevail and the parties' agreement generally will be given effect. *McDonnal and McDonnal,* 293 Or 772, 779, 652 P2d 1247 (1982); *Grove and Grove, supra,* 280 Or at 356 n 12a; *Desler and Desler,* 56 Or App 812, 816 n 3, 643 P2d 655 (1982); *Weseman and Weseman,* 51 Or App 675, 678-79, 626 P2d 942, *rev den* 291 Or 118 (1981); *see also* ORS 107.105(1)(d). In *Desler* we observed that public policy does not preclude enforcement of the parties' voluntary agreement conditioning spousal support on wife's "not living with another man." Here, the provision for termination of spousal support on wife's "cohabitation with a member of the opposite sex" was not imposed by the court, but was a part of the property settlement agreement of the parties. Although we might question the wisdom of including such a provision in a property settlement agreement, we conclude that, under the facts of this case, the provision is enforceable.[1]

■ We next address wife's first assignment of error, that the trial court erred in finding that her relationship with Wullschleger constituted "cohabitation." She argues that the evidence presented did not establish cohabitation within the legally accepted definition of that term. Alternatively, she argues that the term is ambiguous and, therefore, that evidence of the parties' intent at the time of execution of the property settlement agreement should have been considered

---

[1] Wife also argues generally that the equal privileges provision of the Oregon Constitution and the Equal Protection Clause in the Fourteenth Amendment to the Constitution of the United States preclude judicial enforcement of the cohabitation clause as an infringement on her right of freedom of association. That argument is without merit.

and that, considering that evidence, cohabitation as understood by the parties had not occurred. Finally, she argues that, if "cohabitation" is to be given a generalized definition without reference to the intent of the parties, the definition should include a requirement of a permanent economic relationship that affects the need for the decreed spousal support and that that essential element is absent here.

In *Walters and Walters,* 27 Or App 721, 557 P2d 57 (1976), in considering an appeal from a decree imposing on the award of custody of the parties' children to the wife the condition that she not "cohabit" with a man not her husband, we stated that we understood the term to mean "living together as man and wife." 27 Or App 723 n 1. In *Vasconcellos and Vasconcellos,* 58 Or App 390, 648 P2d 1358 (1982) *(Vasconellos I),* we considered a provision in a foreign decree that provided for termination of spousal support if the wife "cohabits with another man." There, the wife's male friend had lived with her for one month, then moved out but continued to spend 80 percent of his nights at her residence. The only economic support the friend provided was in making two loans and taking the wife and her children out to dinner. While not purporting to define "cohabitation," we determined that, under those circumstances, the wife was not cohabiting "within the usual and accepted legal meaning of that term." 58 Or App at 393. In an appeal from a second proceeding to modify the same decree, we found that, because no substantial change in the relationship had occurred, the mere fact that it had continued for eight months did not support a finding of cohabitation. *Vasconcellos and Vasconcellos,* 65 Or App 433, 671 P2d 739 (1983) *(Vasconcellos II).*

In *Vasconcellos I,* in addition to relying on *Walters and Walters, supra,* for the concept of "usual and accepted legal meaning" of cohabitation, the court cited *Burke v. Burke,* 216 Or 691, 340 P2d 948 (1959), and *Weseman and Weseman, supra.* In *Burke,* the Supreme Court held that the word "cohabit," as used in statutes establishing a conclusive presumption of paternity, *former* ORS 41.350 and ORS 107.070, meant "living, abiding, residing or dwelling together" and noted that the term implied not a habit of visiting, but continuity. 216 Or at 695. In *Weseman,* the issue was the enforceability of a provision of a decree of dissolution that

incorporated an agreement of the parties conditioning payment of a lien to husband on wife's remarriage. The wife had not remarried, but she had entered into a living arrangement with a man in which they shared household expenses and jointly owned a car. The wife at one point had advised the husband that she planned to marry but, because of financial concerns, repudiated that intent. The wife and the man with whom she was living had participated in a ceremony in which a local minister had pronounced a "blessing" on them. In *Weseman* we found the wife's "blessed cohabitation" to be a subterfuge to avoid the financial consequences of remarriage and required the wife to pay her former husband the amount of the lien. 51 Or App at 679.

From the foregoing cases it is clear that "cohabitation" is a fact question to be decided in each case. That does not mean, however, that the term is so imprecise as to require evidence of the intent of the parties in making the property settlement agreement. We find it plainly distinguishable from the language used in *Desler and Desler, supra,* on which wife relies. That provision read:

"Husband shall pay alimony to wife in the sum of $100 per month * * * and such payments shall continue until wife's death, remarriage * * * *or at such time as wife should live with another man.*" 56 Or App at 814. (Emphasis supplied.)

In *Desler* we found the emphasized language to be "inherently ambiguous" and, therefore, that parol evidence as to the parties' intent properly was considered, because that language "could have been intended to make support contingent on wife's cohabiting sexually with another man, or wife's receiving some amount of support from another man or * * * on wife's merely living in the same house with another man." 56 Or App at 817.

The term "cohabitation" does not suffer from the ambiguity found in the challenged clause in *Desler*. We conclude that "cohabitation" has a sufficiently precise legal meaning; it refers to a domestic arrangement between a man and woman who are not married to each other, but who live as husband and wife, in that, for more than a brief period of time, they share a common domicile and living expenses and are sexually intimate. Although some economic consequence is inevitable from such a relationship, we decline to adopt wife's

suggestion that financial benefit to the supported spouse that permanently affects the need for the decreed spousal support is a prerequisite to a finding of cohabitation. Cohabitation, like remarriage, may result in a decreased or increased standard of living and may endure for only a limited period, but those factors do not determine the existence of the underlying relationship. From our conclusion that "cohabitation" has a sufficiently precise legal definition and from the evidence of the living arrangement of wife and Wullschleger and its duration, it follows that the trial court was correct in declining to consider the evidence of the parties' intent at the time of the property settlement agreement. Likewise, contrary to wife's contention in her fifth assignment, it was not error for the trial court to sustain an objection to cross-examination of husband on his understanding of the treatment of his retirement fund in the property settlement agreement.

On *de novo* review, we agree with the trial court that the relationship between wife and Wullschleger was more than just a landlord-tenant arrangement and that wife "cohabited" with Wullschleger within the legal meaning of that term. In reaching that conclusion, we are not unmindful of the fact that Wullschleger moved out of wife's residence soon after husband initiated this action and that wife was not cohabiting with Wullschleger at the time of the hearing. However, that wife's living arrangement ultimately did not prove to be permanent is not relevant under the property settlement agreement. We also find no merit in wife's assignment that it was error to exclude evidence of her financial circumstances following the termination of her cohabitation. Cohabitation was the relationship on which termination of spousal support was conditioned. Once it was judicially determined to have existed, husband was entitled to modification of the decree to eliminate the spousal support provisions, and any issue concerning wife's subsequent financial circumstances became moot.

We turn next to wife's fourth assignment, which concerns the trial court's award of a judgment against her for $4,550 for past spousal support. Wife argues that, under ORS 107.135(3), the trial court lacked authority to require her to repay that spousal support. We agree.

ORS 107.135(3) in relevant part provides:

"(3)   The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion."

Under the plain language of that statute, installments of spousal support that have accrued before a motion to modify is made become final judgments beyond the power of the court to alter. Although the statute reserves to the court the authority to modify support obligations that become due after such a motion is filed, a supported spouse is entitled to receive the support set by the decree until it is changed by court order, and any modification made retroactive to the time of filing must be accomplished through prospective arrangements only. *Walker and Walker,* 26 Or App 701, 706, 554 P2d 591, *rev den* (1976). Here, husband's motion to modify was not filed until June, 1983, and the judgment eliminating husband's spousal support obligation was not entered until January, 1984. Husband was not entitled to the return of support payments made before that time.[2]

Contrary to husband's contention, *Conca and Conca,* 61 Or App 555, 658 P2d 542 (1983), does not dictate a contrary result. In *Conca,* the decree provided for automatic termination of the husband's spousal support obligation in the event of the wife's remarriage. When the wife remarried, the husband ceased making spousal support payments. Some four years later, the wife moved to modify the decree to delete the automatic spousal support termination provision and to require the husband to pay support "accrued" since her remarriage. The wife maintained that, under ORS 107.135,

---

[2] In August, 1983, husband ceased making support payments to wife. She then filed a motion for an order to require husband to show cause why he should not be held in contempt for failure to comply with the spousal support provisions of the decree. Husband tendered into court $650 for spousal support payments for September and October, 1983. A hearing on the issue of cohabitation was held in October; in November, 1983, the trial court entered an order finding that cohabitation had occurred as of July, 1982. The judgment entered in January, 1984, modifying the decree to eliminate husband's spousal support obligation also provided that the $650 tendered to the court be paid to husband's attorney. Wife's appeal does not challenge that provision.

the husband's spousal support obligation continued, because he had not moved to terminate it. This court found the statute inapplicable because, by the terms of the decree, spousal support automatically ceased when the wife remarried, and therefore there was no support obligation left to modify. 61 Or App at 558.

*Conca* differs from this case in that there the pivotal fact—the wife's remarriage—was not in dispute, and pursuant to the decree that remarriage resulted in *automatic* termination of spousal support. Here, whether wife had "cohabited" within the provisions of the property settlement agreement was a contested issue requiring judicial determination. That provision did not purport to be self-executing. Accordingly, we modify the judgment of the trial court to delete the $4,550 judgment against wife.

Wife's final assignment and husband's cross-appeal both claim error in the trial court's denial of an award of attorney fees. Each argues that the trial court's respective denial of an award was an abuse of the court's discretion. Husband additionally argues that he was entitled to attorney fees as the prevailing party under a provision in the parties' property settlement agreement and that the court had no discretion to refuse to award him attorney fees pursuant to that provision. *See* ORS 20.096; *U.S. Natural Resources, Inc. v. Gray,* 66 Or App 769, 772-73, 676 P2d 912, *rev den* 297 Or 83 (1984).

The trial court's authority to award attorney fees in a modification proceeding is statutory. ORS 107.135(4). The statute makes the exercise of that authority discretionary. The parties could not deprive the court of that discretion by insertion of an attorney fee provision in their property settlement agreement. It was a matter within the sound discretion of the trial court. *Harrington and Harrington,* 57 Or App 316, 320, 644 P2d 620 (1982). We find no abuse of that discretion and affirm the trial court in that respect.

Judgment modified to delete the $4,550 judgment against wife; otherwise affirmed. Costs to wife.